******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought to recover damages from the defendant city of Bridge-
port, for, inter alia, negligence, in connection with a fire that destroyed
its warehouse and caused substantial environmental damage to the
surrounding area. The plaintiff alleged that the defendant was negligent
in failing to inspect the warehouse as required by statute (§ 29-305) and
that, as a result, its fire department used water rather than foam to
extinguish the fire, which caused the fire to spread, when an inspection
would have revealed the presence of chemicals. After a series of
amended and revised complaints, the plaintiff filed a proposed complaint
in June, 2018, on the same day the defendant's motion for summary
judgment was scheduled to be argued. In its proposed complaint, the
plaintiff newly alleged that the defendant's failure to inspect resulted
in undiscovered code violations, and that these code violations were
the cause of the damages. The defendant argued that the court should not
consider the proposed complaint when deciding its motion for summary
judgment because it was untimely and the new theory of liability was
outside the statute of limitations and did not relate back to the previous
complaints. The court did not decide these issues but, instead, addressed
the merits of the defendant's motion and granted the defendant's motion
for summary judgment on the ground that it was entitled to statutory
(§ 52-557n) governmental immunity and rendered judgment thereon,
from which the plaintiff appealed to this court. *Held*:

1. This court affirmed the judgment of the trial court on the alternative
   ground that the plaintiff's proposed June, 2018 complaint was not prop-
   erly before the trial court; the June, 2018 complaint was not the operative
   complaint for purposes of the defendant's motion for summary judgment
   because the complaint was to be in response to a request to revise but,
   instead, the plaintiff made substantive changes that set forth a new
   theory of liability and were outside the scope of the requested revisions,
   the plaintiff did not seek leave to amend its complaint to add this new
   theory of liability, and the trial court neither explicitly granted the
   plaintiff such leave nor indicated that it weighed the relevant considera-
   tions for determining whether to grant a plaintiff leave to amend a
   complaint; moreover, the plaintiff does not challenge the court's judg-
   ment to the extent it was based on its previous theory of liability but
   only on the basis of the new theory set forth in the June, 2018 complaint
   which was not properly before the court.

2. This court affirmed the judgment of the trial court on the alternative ground
   that, even if the June, 2018 complaint were the operative complaint, the
   new allegations contained therein did not relate back and, therefore,
   were barred by the statute of limitations; all prior iterations of the
   plaintiff's complaint alleged that the acts and omissions of the defendant
   resulted in it improperly using water rather than foam to extinguish the
   fire, thereby causing damage, whereas the allegations in the June, 2018
   complaint alleged that the defendant's failure to inspect the warehouse
   led to undiscovered code violations and that those code violations
   caused the damages and constituted reckless disregard for health and
   safety, an entirely new set of facts never previously alleged that did not
   relate back to the prior, timely filed complaints.

Argued March 11—officially released August 18, 2020

*Procedural History*

Action to recover damages for, inter alia, negligence,
and for other relief, brought to the Superior Court in
the judicial district of Fairfield, where the plaintiff filed

amended and revised complaints; thereafter, the action was withdrawn as to the defendant Brian Rooney et al.; subsequently, the court, *Radcliffe, J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Devin W. Janosov*, with whom was *Donald A. Papcsy*, for the appellant (plaintiff).

*James J. Healy*, with whom were *Barbara Curatolo* and, on the brief, *Bruce L. Levin* and *Lawrence A. Ouellette, Jr.*, associate city attorneys, for the appellee (named defendant).

*Opinion*

PRESCOTT, J. This appeal arises from an action brought by the plaintiff, 25 Grant Street, LLC, against the defendant city of Bridgeport (city),[1] following the destruction of the plaintiff's warehouse by a fire that caused substantial environmental damage to the surrounding area. The plaintiff ultimately alleged that the city was liable for the damage because it had failed to inspect the warehouse prior to the fire, which constituted a reckless disregard for health and safety. The plaintiff appeals from the trial court's summary judgment rendered in favor of the city on the ground that it is entitled to governmental immunity pursuant to General Statutes § 52-557n (b) (8).[2] We affirm the judgment of the trial court on the alternative grounds that are discussed herein.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. The plaintiff owned property located at 25 Grant Street in Bridgeport, which "consisted of 5.92 acres improved with a 44,802 square foot one story industrial/commercial warehouse that sat toward the back of the property near Seaview Avenue." The plaintiff leased this warehouse to the Rowayton Trading Company (Rowayton) and JWC Roofing and Siding Company. Inside the warehouse were fragrance and essential oil products contained in several hundred fifty-five gallon barrels.

On the evening of September 11, 2014, "someone contacted 911 to report that a small fire had broken out . . . at the [plaintiff's] warehouse." To extinguish the fire, the fire department used only water and did not use foam. The fire eventually "consum[ed] the entire warehouse; and caused the release of [at least] 1500 . . . fifty-five gallon barrels of various chemicals into the soil, air, and water surrounding the property." In total, the fire resulted in the plaintiff "sustain[ing] a total loss of [its] warehouse; loss of use of the [25 Grant Street] property; loss of rents; stigma to [the plaintiff's] business; the cost of an [Environmental Protection Agency (EPA)] cleanup; the costs of [the plaintiff's] own attempted cleanup; legal fees [and] costs; and the loss of future profits on the appreciation of its value and/or continued rental of the property."

The plaintiff commenced this action against the city on June 13, 2016. The plaintiff filed its original complaint on June 28, 2016 (original complaint), and then filed or attempted to file five amended or revised complaints thereafter. In the first count[3] of the original complaint, which was titled "negligence," the plaintiff made the following relevant allegations:

"37. Instead of applying foam to the small fire existing at the site when they first arrived, first responding members of the Bridgeport Fire Department and those man-

ning its command structure, applied massive amounts of solid water streams [despite the city being warned against using water] . . . caus[ing] the fire to expand rapidly [and] consum[e] the entire warehouse; and [also resulted in] the release of 1500 or more fifty-five gallon barrels of various chemicals into the soil, air and water surrounding the property. . . .

"43. Defendant [William] Cosgrove, as Bridgeport fire marshal, failed to conduct an inspection of the [plaintiff's warehouse], which was required pursuant to Connecticut General Statutes § 29-305 (a) and (d) (knowledge hazardous to life and safety from fire) and such failure satisfies the exception for liability set forth at . . . § 52-557n (b) (8) in that the knowledge that certain chemicals present could be hazardous to life and safety from fire constitutes reckless disregard for health and safety under all relevant circumstances.

"44. Defendant [Brian] Rooney, as Bridgeport fire chief, failed to conduct an inspection of the [plaintiff's warehouse], for the purposes of 'preplanning the control of a fire [involving] any combustible material . . . that is or may become dangerous as a fire menace,' pursuant to General Statutes § 7-313e (e); and such failure satisfies the exception for liability set forth at . . . § 52-557n (b) (8) in that the knowledge that certain chemicals present could be hazardous to life and safety from [a] fire constitutes reckless disregard for health and safety under all relevant circumstances. . . .

"47. [The] defendant [was] also negligent in one or more of the following ways: (1) failure to have [the information about the warehouse's contents] immediately available so first response by fire personnel would be appropriate to [the] chemicals present; (2) inexcusable delay in ascertaining [the] proper address [of the warehouse] to obtain [the information about the warehouse's contents]; (3) inexcusable delay in obtaining [the] information [about the warehouse's contents]; (4) failure to access chemicals likely present and [the information about the warehouse's contents] from website of [Rowayton]; (5) failure to implement and utilize Computer Aided Management of Emergency Operations (CAMEO) developed by the US Department of Commerce, National Oceanic and Atmospheric Association and U.S. Environmental Protection Agency and designed to help first responders and emergency planners respond to and plan for chemical accidents, including fires involving chemicals; (6) failure to implement and utilize CAMEO Response Information Data Sheets (RIDS), a database of over 4000 chemicals and product trade names linked to chemical-specific information on fire, explosive and health hazards, firefighting techniques, cleanup procedures and protective clothing, developed by the National Oceanic and Atmospheric Association and U.S. Environmental Protection Agency and designed to help first responders and emergency

planners respond to and plan for chemical accidents, including fires involving chemicals; (7) failure to implement an Integrated Command Structure (ICS) early enough; resultant disorganization caused issues with information management that could have potentially put lives at risk; (8) failure to extinguish fire from chemicals in accordance with [prescribed] methods [contained in the information about the warehouse's contents]; (9) failure to use [prescribed] foam created seepage into Yellow Mill River and Long Island Sound (foam would have prevented or mitigated amount of chemical seepage); (10) failure to abide by [the] proscription for those media unsuitable to extinguish a fire for certain chemicals [stated in the information about the warehouse's contents]; (11) failure properly to ensure that members of the fire department, including first responders, have sufficient training in hazardous material response; (12) failure to [develop a plan] [for extinguishing a potential fire] with the [plaintiff's] tenant [who] stored and used chemicals [in the warehouse and, thus] would have identified specific concerns for the [warehouse] and opportunities to prepare effectively for those concerns, or to reduce existing risks. . . .

"50. As a direct and proximate cause of the negligence as set forth herein,

[the] plaintiff [has] incurred [various] injuries . . . ." (Internal quotation marks omitted.)

On July 29, 2016, the city, in response to the original complaint, filed a request to revise in which it requested, inter alia, that the plaintiff provide certain information in its complaint so that the city could plead a governmental immunity defense.[4] The plaintiff did not object to the request to revise and, on September 6, 2016, filed a revised complaint (September, 2016 complaint). It did so, however, only after the city had moved for a judgment of nonsuit because the plaintiff had failed either to object to or to comply with the request to revise in a timely manner. See Practice Book § 10-37 (a).[5] In the September, 2016 complaint, the plaintiff attempted to make most of the revisions that the city had requested. The substance of the plaintiff's allegations in this complaint were the same as those made in the original complaint.[6]

On September 6, 2016, the city again moved for a judgment of nonsuit against the plaintiff. In support of this motion, the city argued that the plaintiff had failed to revise adequately paragraphs 41 and 47 of its original complaint, as requested in its uncontested request to revise.[7] The plaintiff objected to this motion. On November 7, 2016, the court denied without prejudice the city's motion for nonsuit but ordered the plaintiff to comply fully with the city's uncontested request to revise within four weeks.

On December 21, 2016, more than four weeks after the court entered its November 7, 2016 order, the plaintiff filed a new revised complaint (December, 2016 complaint). The only substantive change in this complaint, as compared with the allegations made in the original and September, 2016 complaints, was made to paragraph 47. In this paragraph of the December, 2016 complaint, the plaintiff reduced the number of ways in which the city was allegedly negligent from twelve to six. The plaintiff still alleged in this paragraph, however, that the city was negligent for (1) failing to inspect the warehouse, (2) failing to plan how it would extinguish a potential fire, and (3) using water to extinguish the fire, despite the fact that information was available to the city about the chemicals stored in the warehouse and that, in the event of a fire, foam should be used to extinguish it instead of water.[8]

On December 27, 2016, the city again requested that the plaintiff revise its complaint.[9] In response to the city's request to revise, the plaintiff filed a revised complaint on January 27, 2017 (January, 2017 complaint). In this version of the complaint, the plaintiff added to paragraph 47 of the January, 2017 complaint's allegations that certain acts or omissions of the city—including the city's failure to inspect the warehouse as required by . . . § 29-305 (a) and (d); its failure to use foam to extinguish the fire, even though there were chemicals inside of the warehouse; and its failure to develop a plan for extinguishing a fire—satisfied the exception to governmental immunity found in § 52-557n (b) (8) because "the knowledge that certain chemicals present could be hazardous to life and safety from [a] fire constitutes reckless disregard for health and safety under all relevant circumstances."

After the plaintiff filed its January, 2017 complaint, the city filed its answer and special defenses. The city then moved for summary judgment on August 29, 2017 (first motion for summary judgment). In that motion, the city asserted, inter alia, that it was entitled to summary judgment because "the plaintiff's claim of negligence in the first count of its [January, 2017 complaint] . . . [was] barred by the defense of governmental immunity, to which none of the exceptions apply." (Footnote omitted.)

In response, the plaintiff, on September 5, 2017, sought leave to amend its January, 2017 complaint. It accompanied its request for leave with its proposed amended complaint (September, 2017 complaint).[10] On September 14, 2017, the city objected to the plaintiff's request for leave to amend its complaint. At a hearing on November 13, 2017, the court overruled the city's objection, thereby granting the plaintiff leave to amend its complaint.[11]

In the September, 2017 complaint, the plaintiff alleged

in relevant part: "17. Because there had been no recent inspection of the property, no accurate record keeping and no coordination of known information about the contents of the warehouse . . . the Bridgeport Fire Department was delayed for more than an hour in responding to the fire because they could not figure out how to access the property. . . .

"19. Then and there, given the lack of information, instead of applying foam to the small fire existing at the site when they arrived, they applied massive amounts of solid water streams . . . that caused the fire to expand rapidly, consuming the entire warehouse; and caused the release of 1500 or more 55 gallon barrels of various chemicals into the soil, air and water surrounding the property.

"20. As a proximate result of the firefighter's application of water rather than foam, the plaintiff was caused to sustain [various] loss[es] . . . .

"23. In the present case, the [city] had notice of the violation of law and/or the hazard existing at 25 Grant Street prior to the fire . . . .

"24. Furthermore, and in the alternative, the [city] is liable because [its] failure . . . to inspect the warehouse prior to the fire constituted, not mere negligence, but rather a reckless disregard for health or safety under the circumstances . . . .

"25. As such, the [city] bears financial responsibility for the plaintiff's losses proximately caused by the fire suppression effort as set forth above."[12] (Internal quotation marks omitted.)

At the same November 13, 2017 hearing, the plaintiff also clarified that it was no longer alleging negligence, as it had done in prior iterations of its complaint, and that it was alleging only recklessness against the city.[13] Accordingly, the plaintiff's lead counsel agreed that he would "immediately" file a new one count complaint sounding in recklessness, but he failed to do so until the plaintiff attempted to file the proposed June 16, 2018 complaint (proposed June, 2018 complaint).

On November 15, 2017, the city requested that the plaintiff revise its September, 2017 complaint. The plaintiff neither objected to nor complied with this request, prompting the city, on February 2, 2018, again to move for a judgment of nonsuit pursuant to Practice Book § 10-18. Prior to the court's adjudication of the motion for judgment of nonsuit, the city, on March 28, 2018, moved for summary judgment a second time (second motion for summary judgment). In sum, the city argued that the court should enter summary judgment in its favor on the basis of governmental immunity because there was no genuine issue of material fact as to whether the city exhibited recklessness in connection with the fire that occurred at the plaintiff's warehouse.

On April 16, 2018, the court denied the city's motion for judgment of nonsuit and ordered that the plaintiff file a revised complaint within three weeks. In doing so, the court never granted the plaintiff leave to file an amended complaint but simply ordered it to file a revised complaint that complied with the city's November 15, 2017 request to revise. The plaintiff failed to comply with the court's order. This prompted the city on May 8, 2018, to move again for a judgment of nonsuit pursuant to Practice Book § 17-19.

On June 18, 2018, the plaintiff filed its proposed June, 2018 complaint, in which the plaintiff alleged for the first time that fire code violations in the warehouse, which the city should have discovered during an inspection required by § 29-305, were the proximate cause of the substantial damage to its warehouse.[14] Specifically, in its one count proposed June, 2018 complaint, the plaintiff alleged in relevant part:

"6. At all times mentioned herein an inspection of the property by the [city's] fire marshal, or by the [city's] fire chief, or his designee, would have revealed that [the chemicals contained in the warehouse], if ignited, could not be suppressed with water, and that in fact water would cause any fire, however small, to become a conflagration engulfing the entire warehouse. . . .

"8. *In addition, upon inspection, they would have found several code violations requiring immediate remediation.* . . .

"14. *Because there had been no inspection* of the property for over fifteen years, *and therefore no remediation of code violations that would have been found upon inspection, a minor fire turned into a conflagration that destroyed the entire property.*

"15. Then and there, *because of the repeated lack of inspection, the fire . . . expand*[ed] *rapidly,* consuming the entire warehouse; *and caused the release of several hundred fifty-five gallon barrels of various chemicals* into the soil, air and water surrounding the property.

"16. As a proximate result of the fire department's *reckless failure to comply with state law and inspect the property for code violations* for more than fifteen years, the plaintiff was caused to sustain [various] loss[es] . . . .

"18. The [city] . . . is liable to the plaintiff due to its reckless and repeated disregard of its statutory duty to inspect the subject warehouse *which inspection would have shown serious code violations requiring immediate remediation thereby causing the compete loss of the building and the other damages* specified above.

"19. The reckless actions of the [city's] agents included: (a) the fire marshal failing more [than] fifteen

times over fifteen years to honor his statutory duty; (b) the fire chief ignoring for more than fifteen years his duties per city ordinance to inspect and provide reports and accurately keep records; (c) *failing to identify and remediate serious code violations that would have been found upon inspection* including amounts of chemical that were stored on the property, improper storage of said chemicals, and the lack of any sprinkler system [or] [fire] suppression system." (Emphasis added.)

Notably, the plaintiff did not seek leave to amend its September, 2017 complaint pursuant to Practice Book § 10-60. Instead, the plaintiff attempted to file its proposed June, 2018 complaint *the same day as* the court's June 18, 2018 hearing on the city's second motion for summary judgment.[15] The plaintiff also filed an objection to the city's motion for summary judgment *the same day as* the court's June 18, 2018 hearing on this motion.

The city, on June 18, 2018, objected to the proposed June, 2018 complaint on the basis of the plaintiff's failure to comply with Practice Book § 10-60 and filed two supplemental memoranda in support of its second motion for summary judgment. In both its objection and supplemental memoranda, the city argued in relevant part that, "[a]s a matter of law . . . the [June, 2018] complaint sets forth a cause of action never previously pleaded, [and it] does not relate back to the filing of the operative complaint, and, therefore, is violative of the applicable statute of limitations[16] for this September 11, 2014 fire claim such that it is time barred." (Footnote added.) The city also objected to the proposed June, 2018 complaint becoming the operative complaint on the grounds that it was filed after deadlines imposed by the court and that it would have to expend additional resources conducting discovery on and defending against the new theory of liability set forth therein after already having expended significant resources conducting discovery on and defending against the theory of liability that the plaintiff had set forth for approximately two years in prior versions of the complaint.[17]

Moreover, the city, in a June 22, 2018 memorandum, argued that the court should not consider the plaintiff's proposed June, 2018 complaint in adjudicating its second motion for summary judgment. In this memorandum, the city argued that, "when acting upon the defendant's [second] motion for summary judgment . . . the court should only consider the [September, 2017] operative amended complaint, and exclude from its consideration the plaintiff's untimely . . . [proposed June, 2018] complaint . . . ." The city also noted that "if [the plaintiff] desired to introduce the new factual and legal claims that it is now attempting to assert in its [proposed June, 2018] complaint, [then it could have timely] file[d], in [accordance with] Practice Book § 10-60 . . . a request for leave to amend, along with an appended

amended complaint, [which] would have allowed [the court to determine] whether [the proposed June, 2018] complaint would [become the] operative amended complaint . . . well before the scheduling order's . . . deadlines for the [city's] motion for summary judgment." Moreover, the city asserted that "the plaintiff's [September, 2017 amended complaint [would] continue to be the operative complaint until the [city's] . . . objection to the plaintiff's [proposed June, 2018] complaint has been decided . . . ." The court scheduled hearings on the city's second motion for summary judgment for June 18 and 25, 2018. The plaintiff's lead counsel failed to attend both hearings and, instead, a different attorney appeared in his place at both hearings.[18] On June 25, 2018, the court granted the city's second motion for summary judgment on the basis of governmental immunity. In addressing the merits of the case, the court noted that "this is a case in which the [plaintiff] allege[s] . . . that there was a reckless failure to inspect, and that reckless failure to inspect did not uncover certain [fire code] violations and that the failure to uncover those violations led to a conflagration and led to the fire department responding using water instead of foam, [despite] the contents of the . . . warehouse . . . ." Moreover, the court characterized the plaintiff's claim as alleging "that there was a reckless failure to inspect based upon a policy that no inspection what[so]ever would be done. . . . And that had there been an inspection, certain violations would have been discovered. And but for that, it . . . would not have led to the property damage to the extent that it did."

In rendering summary judgment in favor of the city, the court noted that the plaintiff's case was not brought within the narrow exception to governmental immunity for a municipality's reckless failure to conduct an inspection for fire code violations that was established in *Williams* v. *Housing Authority*, 327 Conn. 338, 364, 368, 174 A.3d 137 (2017).[19] In *Williams*, our Supreme Court determined that, despite general principles concerning governmental immunity, a municipality may be liable for damages to person or property if the municipality has a "general policy of not conducting inspections of a certain type"; id., 368; and that "it is clear that the failure to inspect may result in a catastrophic harm, albeit not a likely one." Id., 364. Such conduct, according to the court, would "in the context of § 52-557n (b) (8), [constitute] a . . . reckless disregard for health or safety." Id., 364.

In light of this narrow exception to governmental immunity, the trial court rendered summary judgment in favor of the city because the plaintiff had failed to establish that there was a genuine issue of material fact that "there [had] been [any fire] code violations that [were] . . . a substantial factor in causing either the fire or the method of response by the Bridgeport Fire Company . . . ." Furthermore, the court concluded

that "there's no genuine issue of fact [as to whether the city's failure to inspect the warehouse constituted recklessness] because no violation of the code is shown . . . ."

Although the plaintiff's lead counsel failed to attend both hearings on the city's second motion for summary judgment, the court, nevertheless, stated that it would "entertain a motion to reargue if it is filed within the appropriate time . . . and gives a basis for denying the motion for summary judgment." In response, the plaintiff, on July 16, 2018, moved to reargue the city's motion. The city opposed the plaintiff's motion to reargue. After hearing arguments from both parties, the court granted reargument but denied relief, reiterating that "as a matter of law . . . there [is no] genuine issue of material fact . . . because a mere failure to inspect without more, [is] not . . . sufficient to show [reckless] conduct." Furthermore, the court noted that "there's been no showing [by the plaintiff] that [the city's] failure to inspect [its warehouse] was wilful, intentional, deliberate or was pursuant to a policy whereby there were no inspection[s] of a particular class of facilities . . . ." This appeal followed.

On appeal, the plaintiff claims that the trial court improperly rendered summary judgment for the city on the basis of governmental immunity. Specifically, the plaintiff claims that there was a genuine issue of material fact as to whether the city's failure to inspect the plaintiff's warehouse, and therefore its failure to uncover fire code violations therein, constituted a "reckless disregard for health or safety under all the relevant circumstances . . . ." See General Statutes § 52-557n (b) (8). The plaintiff, on appeal, however, does not contest the court's rendering of summary judgment in favor of the city based on the theory of liability that it alleged in prior versions of its complaint, i.e., that the city improperly decided to use water rather than foam to extinguish the fire in its warehouse, resulting in significant damage to the warehouse and surrounding property.

In its appellate brief, the city argues, in sum, that the court properly rendered summary judgment in its favor on the basis of governmental immunity because there was no genuine issue of material fact as to whether its conduct in connection with the warehouse fire was reckless. The city also argues that the plaintiff cannot prevail on its claim on appeal for two alternative reasons.

First, the city asserts that the proposed June, 2018 complaint was not the operative complaint and thus was not properly before the court. In its preliminary statement of issues on appeal, the city states that the court improperly considered the proposed June, 2018 complaint, even though "that complaint was barred by the statute of limitations, filed the morning of argument

on [the city's] motion for summary judgment and filed in violation of the scheduling order.''[20]  Moreover, in its appellate brief, the city asserts that the September, 2017 complaint was the operative complaint.[21]

Second, the city argues that the trial court properly rendered summary judgment in its favor because the new theory of liability set forth in the proposed June, 2018 complaint alleging that the city recklessly failed to inspect the plaintiff's warehouse and uncover fire code violations was barred by the statute of limitations. Having considered the arguments of both parties, we conclude that the trial court properly rendered summary judgment in favor of the city. We do so, however, on the alternative grounds that (1) the plaintiff's proposed June, 2018 complaint, and the new allegations contained therein, was not the operative complaint and thus was not properly before the trial court and, (2) even if the proposed June, 2018 complaint was the operative complaint, the new allegations contained therein were barred by the statute of limitations.

I

Before we consider whether the new theory of liability set forth in the plaintiff's proposed June, 2018 complaint relates back to the original complaint for purposes of compliance with the statute of limitations, we first must address whether this version of the complaint became the operative complaint. For the following reasons, we conclude that the proposed June, 2018 complaint was not the operative complaint and, therefore, that complaint, including the new theory of liability set forth therein, was not properly before the trial court in adjudicating the motion for summary judgment.

We begin by setting forth legal principles relevant to amending a complaint. This court has stated that "[General Statutes §] 52-128 and Practice Book § 10-59 allow the curing of any defect [or] mistake in a complaint as of right within thirty days of the return date. If an amendment is as of right, the amendment takes effect ab initio. . . . Practice Book § 10-60 allows a plaintiff to amend his or her complaint more than thirty days after the return day [only] by [order of the] judicial authority, written consent of the adverse party, or filing a request for leave to amend with the amendment attached.'' (Citations omitted; internal quotation marks omitted.) *Gonzales* v. *Langdon*, 161 Conn. App. 497, 517–18, 128 A.3d 562 (2015).

The plaintiff argues that the proposed June, 2018 complaint was the operative complaint because it was filed in response to the court's April 16, 2018 order compelling it to file a "revised complaint.'' In essence, the plaintiff contends that, by ordering it to file a "revised complaint,'' the court permitted it to make any and all substantive changes to its September, 2017 complaint that it wanted to make, including making

new allegations or alleging new theories of recovery that had not previously been set forth. Thus, the plaintiff implicitly argues that all of the *substantive changes* that it made to the September, 2017 complaint were made in response to the court's April 16, 2018 order and that, therefore, its proposed June, 2018 complaint automatically became the operative complaint. We disagree with the plaintiff's argument.

In arriving at this conclusion, we consider the relevant procedural history that preceded the court's April 16, 2018 order. The city filed a request to revise directed at the plaintiff's September, 2017 complaint, and the plaintiff did not object to this request. Practice Book § 10-37 (a) provides in relevant part that a request to revise "shall be deemed to have been automatically granted by the judicial authority on the date of filing and shall be complied with by the party to whom it is directed within thirty days of the date of filing the same, unless within thirty days of such filing the party to whom it is directed shall file objection thereto." Thus, by neither objecting to nor complying with the city's request to revise within thirty days of it having been filed, the plaintiff failed to comply with a request to revise that automatically had been granted by the court. See Practice Book § 10-37 (a).

Because the plaintiff failed to comply with this request to revise, the city moved for nonsuit. On April 16, 2018, the court denied the city's motion for nonsuit, but it ordered the plaintiff to file a "*revised complaint*" within three weeks. (Emphasis added.)

In light of this procedural history, we reject the plaintiff's assertion that the court's April 16, 2018 order was an invitation to make any and all substantive changes to its September, 2017 complaint that it desired. Rather, we construe the court's order as compelling the plaintiff to file a "revised complaint" that complied with the city's duly granted request to revise.

The plaintiff, however, attempted to make substantive changes to its September, 2017 complaint that were outside the scope of the revisions that the court had ordered. Indeed, the plaintiff, in its proposed June, 2018 complaint, set forth an entirely new theory of liability. Accordingly, we reject the plaintiff's argument that the proposed June, 2018 complaint automatically became the operative complaint upon being filed because the proposed complaint contained substantive changes that the city did not request in its request to revise.

In the alternative, the plaintiff argues that its proposed June, 2018 complaint was the operative complaint at the time that the court adjudicated the city's second motion for summary judgment because the court had determined it as such. In support of this argument, the plaintiff points to a colloquy between the court and the city's counsel at the June 25, 2018 hearing.

During this exchange, the city's counsel stated that the city objected to the proposed June, 2018 complaint because the plaintiff had attempted to file it after the "pleading closure deadline fixed in the court's scheduling order" and the deadline for the plaintiff to file a revised complaint that the court had imposed in its April 16, 2018 order. In response, the court stated that it would "allow [the complaint] based on the deadlines . . . because . . . the court ha[d] a flavor of [what was] being requested . . . [and] . . . want[ed] to get to the merits of [the case]." By making this statement at the hearing, the plaintiff asserts that the court had, in effect, permitted it to amend its September, 2017 complaint pursuant to Practice Book § 10-60 and had concluded that the proposed June, 2018 complaint was the operative complaint. We disagree with this argument for three reasons.

First, there is no indication in the record that the plaintiff sought leave to amend its September, 2017 complaint and that any request for leave to amend, along with the proposed June, 2018 complaint, was properly served on the city, as required by Practice Book § 10-60 (a) (3). Section 10-60 (a) (3) requires that a request for leave to amend be made and that it contain a proof of service indicating that the request and the proposed amended complaint were properly served on the opposing party.[22] *Gonzales* v. *Langdon*, supra, 161 Conn. App. 517–18.

By way of comparison, in attempting to amend its January, 2017 complaint, the plaintiff sought leave to amend. The September 5, 2017 request for leave to amend contained a certificate of service, in which the plaintiff's lead counsel certified that the city's counsel was served both its request for leave to amend and its proposed September, 2017 complaint.[23] Moreover, at the November 13, 2017 hearing, the court overruled the city's objection to the proposed September, 2017 complaint and thereby determined that this complaint was the operative complaint.

When the plaintiff attempted to amend its September, 2017 complaint, however, it failed to seek leave to amend it. Moreover, there is no indication in the record that the city properly was served with the plaintiff's request for leave to amend and its proposed June, 2018 complaint.[24]

Second, the court never explicitly ruled on whether the plaintiff would be granted leave to amend its complaint. This court has stated that in the absence of a trial court *explicitly* granting a request for leave to amend a complaint, an appellate tribunal should infer that the trial court denied such a request for leave to amend. See *Gonzales* v. *Langdon*, supra, 161 Conn. App. 509.

Moreover, our unwillingness to infer that the court

granted the plaintiff leave to amend its complaint is buttressed by the fact that there is no indication in the record as to whether the court weighed the relevant considerations for determining whether a plaintiff should be granted leave to amend his or her complaint. Although determining whether to permit leave to amend a complaint is within the discretion of a trial court, a court, in exercising its discretion, normally weighs certain considerations to determine whether allowing an amendment is appropriate. See id., 509–10, 518. As this court has stated, "[t]he allowance of an amendment to a complaint more than thirty days after the return day . . . rests in the discretion of the court. . . . Much depends upon the particular circumstances of each case. The factors to be considered include unreasonable delay, fairness to the opposing parties, and negligence of the party offering the amendment." (Internal quotation marks omitted.) Id., 509–10. Moreover, "[c]ourts traditionally deny leave to amend only if the amendment would prejudice the defendant by causing undue delay *or the amendment does not relate back to the matters pleaded in the original complaint*." (Emphasis added.) Id., 518. "In exercising its discretion with reference to a [request] for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment or to his adversary by granting the motion, with the resultant delay." (Internal quotation marks omitted.) *Miller* v. *Fishman*, 102 Conn. App. 286, 294, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008).

Turning to the present case, the city filed an objection to the June, 2018 complaint and set forth three primary reasons in support of its objection. First, the city asserted that the proposed June, 2018 complaint was untimely based on certain deadlines for filing a revised complaint that the court had imposed.

Second, the city asserted that the proposed June, 2018 complaint was prejudicial to the city and would delay significantly the trial of this case because it set forth a new theory of liability. Specifically, the city stated that, after two years of setting forth a consistent theory of liability, the plaintiff completely changed its theory in its proposed June, 2018 complaint, which it filed *the same day as* the June 18, 2018 hearing on the city's second motion for summary judgment. This new theory of liability would require the city to conduct additional discovery and investigation to defend against it.

Third, the city objected to the proposed June, 2018 complaint on the ground that the new theory of liability set forth therein was barred by the statute of limitations. We address this issue in part II of this opinion.

The court, at the June 25, 2018 hearing and in the

absence of the plaintiff's lead counsel, appears to have declined to address most of the grounds asserted in the city's objection to the proposed June, 2018 complaint. Instead, the court simply stated that, despite the deadlines for filing a revised complaint that the court had imposed, it "[preferred] to get to the merits of [the case]." The court, however, did not address the other grounds raised in the city's objection, even though all of the grounds set forth in its objection are considerations that a trial court usually assesses when determining whether to grant a plaintiff leave to amend its complaint. See *Gonzales* v. *Langdon*, supra, 161 Conn. App. 509–10, 518; *Miller* v. *Fishman*, supra, 102 Conn. App. 293–94.

Because the plaintiff did not properly seek leave to amend its complaint pursuant to Practice Book § 10-60 (a) (3), and the court neither explicitly granted the plaintiff leave to amend nor indicated that it had weighed the relevant considerations for determining whether to grant a plaintiff leave to amend, we conclude that the court did not permit the plaintiff to amend its September, 2017 complaint.[25] Therefore, we also conclude that the proposed June, 2018 complaint did not become the operative complaint. See *Gonzales* v. *Langdon*, supra, 161 Conn. App. 509.

Because we have determined that the proposed June, 2018 complaint was not the operative complaint, we further conclude that this complaint, including the new theory of liability set forth therein, was not properly before the trial court. Moreover, as previously stated in this opinion, on appeal, the plaintiff claims *only* that the court improperly rendered summary judgment in favor of the city based on the new theory of liability that it set forth in its proposed June, 2018 complaint. It *does not* claim that the court's rendering of summary judgment in favor of the city based on the theory of liability set forth prior to the proposed June, 2018 complaint was improper, to the extent that the court rendered summary judgment in favor of the city based on this theory. Therefore, because the proposed June, 2018 complaint was not the operative complaint and both it and the new theory of liability set forth therein were not properly before the trial court, we conclude that the trial court properly rendered summary judgment in favor of the city.

Even if we were to conclude that the proposed June, 2018 complaint was the operative complaint, the city argues that the new allegations in that complaint, including the new theory of liability set forth therein, are barred by the statute of limitations. In support of this argument, the city asserts that these new allegations were raised outside of the two year limitation period for actions alleging negligent or reckless conduct; see footnote 16 of this opinion; and do not relate back to the original complaint. We turn then to this alternative

basis for affirming the trial court's rendering summary judgment in favor of the city.

## II

Assuming for the sake of argument that the proposed June, 2018 complaint was, indeed, the operative complaint, the plaintiff contends that the new allegations set forth in this complaint were not barred by the statute of limitations. In support of this argument, the plaintiff asserts that, even though these allegations were brought outside of the two year limitation period for actions alleging negligent or reckless conduct; see footnote 16 of this opinion; they related back to the original complaint. We disagree with the plaintiff.

We begin by setting forth our standard of review and relevant legal principles pertaining to whether amendments made to a complaint relate back to the original complaint for purposes of compliance with the statute of limitations. Our Supreme Court has stated that "[t]he de novo standard of review is always the applicable standard of review for" making such a determination. (Internal quotation marks omitted.) *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 325 Conn. 198, 206, 157 A.3d 70 (2017). Indeed, "[i]f the statute of limitations has expired and an amended pleading does not relate back to the earlier pleading, then the trial court has no discretion to allow an amendment." Id., 206 n.8. Determining whether an amendment relates back "is grounded in interpretation of the pleadings and is not the type of determination that a trial court is in a better position to make than an appellate court. Therefore, whether a pleading relates back is subject to plenary review." Id.

"The relation back doctrine [is] well established . . . . [An amendment relates back for purposes of the statute of limitations when it] amplif[ies] or expand[s] what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but [when] an entirely new and different factual situation is presented, a new and different cause of action [that does not relate back has been] stated. . . .

"Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . ." (Citations omitted; internal quotation marks omitted.) Id., 207; see *Sempey* v. *Stamford Hospital*, 180 Conn. App. 605, 612, 184 A.3d 761 (2018). "[I]n order to provide fair notice to the opposing party, the proposed new or changed allegation . . . must fall within the scope of the original cause of action, which is the transaction or occurrence underpinning

the plaintiff's legal claim against the defendant. Determination of what the original cause of action is requires a case-by-case inquiry by the trial court. In making such a determination, the trial court must not view the allegations so narrowly that any amendment changing or enhancing the original allegations would be deemed to constitute a different cause of action. But the trial court also must not generalize so far from the specific allegations that the cause of action ceases to pertain to a specific transaction or occurrence between the parties that was identified in the original complaint." (Emphasis omitted; footnote omitted.) *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, supra, 325 Conn. 210.

Importantly, "[i]f the alternat[ive] theory of liability [in the amended complaint] may be supported by the original factual allegations, then the mere fact that the amendment adds a new theory of liability is not a bar to the application of the relation back doctrine. . . . If, however, the new theory of liability is not supported by the original factual allegations of the earlier, timely complaint, and would require the presentation of new and different evidence, the amendment does not relate back." (Citation omitted.) *Sherman* v. *Ronco*, 294 Conn. 548, 563, 985 A.2d 1042 (2010).

Moreover, in determining whether an amendment relates back, we also "must . . . determine whether the new allegations support and amplify the original cause of action or state a new cause of action entirely. Relevant factors for this inquiry include, but are not limited to, whether the original and the new allegations involve the same actor or actors, allege events that occurred during the same period of time, occurred at the same location, resulted in the same injury, allege substantially similar types of behavior, and require the same types of evidence and experts." *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, supra, 325 Conn. 211. If the amendment does not support or amplify the original cause of action and instead states a new cause of action entirely, then the amendment does not relate back. See id., 207–208. "[I]n the cases in which [our courts] have determined that an amendment does not relate back to an earlier pleading, the amendment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding upon previous allegations." (Internal quotation marks omitted.) Id.; see *Sempey* v. *Stamford Hospital*, supra, 180 Conn. App. 612.

We are also mindful of our well settled rules for construing pleadings to determine whether an amendment relates back to the original complaint for purposes of compliance with the statute of limitations. "When comparing [the original and proposed amended] pleadings [to determine whether allegations in an amended complaint relate back for purposes of the statute of limitations], we are mindful that, [i]n Connecticut, we

have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Briere* v. *Greater Hartford Orthopedic Group*, *P.C.*, supra, 325 Conn. 209.

Moreover, in determining whether an amendment relates back, "[w]e note that the original [complaint] itself must provide the opposing party with notice of a cause of action that encompasses the proposed amended allegations. . . . A plaintiff may not rely solely on disclosures made during discovery to overcome his failure to plead a cause of action prior to the expiration of the statute of limitations that he later decides is a better claim." Id., 210 n.9.

Turning to the present case, the plaintiff acknowledges "that the pleadings in the [present] case are *far from* perfect." (Emphasis in original.) The plaintiff nevertheless sets forth two arguments in support of its claim that the new allegations in the proposed June, 2018 complaint relate back for purposes of the statute of limitations. First, the plaintiff contends that these new allegations relate back because the plaintiff "consistently alleged, although under a heading which was not entitled 'recklessness,' statutory recklessness by the [city] . . . ." (Emphasis omitted.) Moreover, the plaintiff argues that, in all versions of the complaint, the city's "recklessness" derived from its failure to inspect the plaintiff's warehouse, in violation of § 29-305. In the alternative, the plaintiff asserts that, even if versions of the complaint filed prior to the proposed June, 2018 complaint did not put the city on notice of its theory of liability concerning undiscovered code violations, its response to one of the city's interrogatories provided this notice. We are not persuaded by these arguments for the reasons that follow.

A

The plaintiff first argues that its allegations regarding code violations relate back because, in every iteration of the complaint, the plaintiff generally alleged that the city had failed to inspect its warehouse and that such conduct was reckless. In support of this argument, the plaintiff points to paragraphs 43 and 44 of its original complaint, in which it alleged that the fire marshal had failed to inspect its warehouse and that "such failure

satisfies the exception for liability set forth at . . . § 52-557n (b) (8) in that the *knowledge that certain chemicals present* could be hazardous to life and safety from fire constitutes a *reckless disregard for health and safety under all relevant circumstances*," and that the fire chief had "*failed to conduct an inspection* of the [plaintiff's warehouse], *for the purposes of 'preplanning the control of fire . . . where any combustible material . . . that is or may become dangerous as a fire menace'* pursuant to General Statutes § 7-313e (e); *and such failure satisfies the exception for liability set forth at . . . § 52-557n (b) (8) in that the knowledge that certain chemicals present could be hazardous to life and safety from fire constitutes a reckless disregard for health and safety under all relevant circumstances*." (Emphasis added.)

In light of these allegations in the original complaint, the plaintiff asserts that it "consistently alleged [in various iterations of the complaint] statutory recklessness by the defendant under . . . § 52-557n (b) (8)," and, therefore, the city had sufficient notice for the theory of liability in the proposed June, 2018 complaint concerning undiscovered code violations to relate back. (Emphasis omitted.) Moreover, the plaintiff contends that "the . . . complaint[s] [subsequent to the original complaint merely] amplify this particular portion of the allegations contained within the original [complaint], so as to fit more squarely with the facts obtained during discovery in the matter." We are not persuaded by the plaintiff's argument.

In asserting that these new allegations in the proposed June, 2018 complaint relate back, the plaintiff misconstrues our state's well established relation back doctrine. Indeed, merely alleging that a defendant violated a statute or that a defendant was negligent or reckless in all iterations of a complaint by themselves is insufficient for allegations to relate back to the original complaint for purposes of compliance with the statute of limitations. See *Sharp* v. *Mitchell*, 209 Conn. 59, 73, 546 A.2d 846 (1988) (concluding that "[t]he fact that the same defendant is accused of negligence in each complaint and the same injury resulted . . . does not make any and all bases of liability relate back to an original claim of negligence").

In determining whether an amendment to a complaint relates back, we must analyze whether the amendment sets forth a new theory of liability that relies on "different . . . circumstances and . . . different facts" that would require a "defendant . . . to gather different facts, evidence and witnesses to defend the amended claim" or whether the amendment merely "amplifie[s] and expand[s] upon the previous allegations by setting forth alternat[ive] theories of liability." *Gurliacci* v. *Mayer*, 218 Conn. 531, 549, 590 A.2d 914 (1991). Indeed, "[i]f . . . the new theory of liability is not supported

by the original factual allegations of the earlier, timely complaint, and would require the presentation of new and different evidence, the amendment does not relate back." *Sherman* v. *Ronco*, supra, 294 Conn. 563.

Before making these determinations regarding new allegations in the proposed June, 2018 complaint, we must first assess the differences between the new theory of liability set forth in that complaint and the theory set forth in prior versions of the complaint. All of the versions of the complaint preceding the proposed June, 2018 complaint set forth a consistent theory of liability. In these versions, the plaintiff alleged that the city failed to access information in its possession about the chemicals in the warehouse or, in the alternative, failed to inspect the warehouse and document the presence of chemicals in the warehouse. The plaintiff also alleged that the city failed to develop a plan for extinguishing a potential fire in its warehouse that accounted for the presence of chemicals inside the warehouse. Based on these allegations, the plaintiff's theory of liability in these complaints was that, as a result of the city's failure to utilize information about the chemicals in the warehouse that it possessed or should have possessed, the city improperly decided to use water rather than foam to extinguish the fire that occurred. Thus, in sum, the theory of liability alleged by the plaintiff in these complaints was that the *manner* in which the city extinguished the fire was the proximate cause of the damages to its warehouse and property.

The new theory of liability that the plaintiff set forth in its proposed June, 2018 complaint, however, is distinct from the theory that it set forth in the prior iterations of its complaint. Indeed, the attorney, Thomas G. Cotter, who appeared at the June, 2018 hearing in the place of the plaintiff's lead counsel, appears to have acknowledged this in the following exchange with the court:

"The Court: Well, what's the cause of action—the new cause of action in the [June, 2018] complaint? It seems to me that [the plaintiff is] alleging here that there was a reckless failure to inspect at all pursuant to a policy and that—that an inspection would have— unlike the initial complaint, [the plaintiff is] alleging that an [inspection] would have disclosed violations of the code, and that those violations of the code were a substantial factor in causing the destruction of the property because, but for the failure to inspect, they wouldn't have existed.

\* \* \*

"The Court: I've tried—I tried to look at the original— the amended complaint of September [3], 2017, and I didn't see any allegation in there—and, correct me if I'm wrong, Mr. Cotter, I didn't see any allegation in that complaint that there was a violation of the fire code or the building code for that matter. Now—although the

fire company's not responsible for the building code. I didn't see any. Am I missing something?

"[The Plaintiff's Attorney]: No, you're not, Your Honor."

In its proposed June, 2018 complaint, the plaintiff alleges that the city recklessly failed to inspect the plaintiff's warehouse in violation of § 29-305. For the first time during the course of this litigation, the plaintiff also alleged that, as a result of this failure to inspect the warehouse, the city failed to uncover certain fire code violations and that these undiscovered code violations proximately caused the fire in the plaintiff's warehouse to be more intense, resulting in greater damage to the plaintiff's warehouse and surrounding property. Thus, unlike the theory of liability alleged prior to the proposed June, 2018 complaint, this new theory of liability *does not* assert that the *manner* in which the city extinguished the fire proximately caused significant damage to the plaintiff's warehouse and surrounding property. Rather, it asserts that code violations existed at the warehouse that the city should have discovered during an inspection. The plaintiff alleges that *these code violations caused* the fire to intensify, resulting in significant damage to the warehouse and surrounding property.

Having concluded that the new theory of liability in the proposed June, 2018 complaint is distinct from the theory contained in all prior versions of the complaint, we must now determine whether it relates back for purposes of compliance with the statute of limitations. To make this determination, we must determine whether this theory is dependent on different factual allegations than those made in prior iterations of the complaint. See *Sherman* v. *Ronco*, supra, 294 Conn. 563. We also must determine whether this new theory would require the city to gather facts and evidence to defend against it that are different than what would have been necessary to defend against the prior theory. See *Gurliacci* v. *Mayer*, supra, 218 Conn. 549.

First, we conclude that the new theory alleged in the proposed June, 2018 complaint is dependent on factual allegations that were not set forth in prior iterations of the complaint. Indeed, the new theory is dependent on the warehouse containing code violations that an inspection would have uncovered and that these violations caused either the ignition or intensification of the fire. In iterations of its complaint prior to the proposed June, 2018 complaint, however, the plaintiff *never* alleged that such code violations existed at its warehouse, let alone alleged that these undiscovered violations either caused the fire to start or intensified it. Thus, the new theory depends on factual allegations that were not made prior to the proposed June, 2018 complaint.

Second, the facts and evidence necessary for the city to defend against the prior theory of liability differ from what would be necessary to defend against the new theory. The plaintiff's prior theory of liability, which alleged that that the damage to its warehouse was proximately caused by the city's erroneous decision to use water rather than foam to extinguish the fire, would require that both parties produce evidence concerning firefighting strategies. To defend against this theory, the city likely would have presented evidence showing, inter alia, that its actions *after* the fire started—its decision to use water rather than foam on the fire—were not the proximate cause of the harm that the plaintiff suffered.

To defend against the new theory of liability, however, the city would be required to produce evidence that was significantly different from that needed to defend against the prior theory. Indeed, to defend against the new theory, the city's evidence would need to focus on the *cause* of the fire. The city would need to present evidence disputing the existence of fire code violations and that these code violations proximately caused the fire to start or to burn more intensely.

Accordingly, we conclude that the new theory set forth in the proposed June, 2018 complaint relies on facts *never* alleged in prior iterations of the complaint and would require different facts and evidence for the city to defend against it than the prior theory. For the reasons stated, we conclude that the plaintiff's first argument is unpersuasive and that its new theory of liability does not relate back for purposes of the statute of limitations.

B

The plaintiff's second argument—that the city was on notice of its theory of liability concerning undiscovered code violations based on an answer that the plaintiff provided to one of its interrogatories—fails for two primary reasons. In support of this argument, the plaintiff points to an interrogatory of the city and its response to the interrogatory:

"Q. What is the legal basis for the plaintiff's claim that the [city] . . . had a ministerial duty to inspect the [plaintiff's warehouse?]

"A. There is a statutory duty to annually inspect buildings such as [the plaintiff's warehouse] imposed by the fire code on the fire marshal. Had the fire marshal conducted an inspection the [city] would have known the nature of the chemicals stored and [the] quantity. Moreover, [it] would have known how to access the building. Further, [the city] would have advised [the plaintiff] as to any modifications necessary to ensure that foam as opposed to water could be used in the event of a fire. By failing in [its] duties, the plaintiff suffered unnecessary and enormous loss. The [city's

employees] clearly should have known that this was an occupied warehouse, and that their failure to [develop] a . . . plan [for extinguishing a potential fire] exposed an identifiable victim to harm—that victim being [the plaintiff], the residences adjacent to the warehouse, [the plaintiff's] lessees and the environment. In addition, discovery is ongoing as to the procedures and customs of the [city], which [the plaintiff] expect[s] [will uncover] additional buttressing ministerial duties, as public safety and [developing plans for addressing] fires and other emergencies was the foundation for the duties assigned to [the city]." In its brief, the plaintiff asserts that its response to the city's interrogatory "[put] the [city] on notice of the precise type of claim which the plaintiff intended to bring regarding violating the inspection policies and . . . § 52-557n (b) (8)."

First, in making this argument, the plaintiff completely disregards the proper analysis for determining whether amendments made to a complaint relate back to the original complaint for purposes of compliance with the statute of limitations. Indeed, our Supreme Court has stated "that the *original* [*complaint*] *itself* must provide the opposing party with notice of a cause of action that encompasses the proposed amended allegations [and that a] plaintiff *may not rely solely on disclosures made during discovery to overcome his failure to plead a cause of action prior to the expiration of the statute of limitations that he later decides is a better claim*." (Emphasis added.) *Briere* v. *Greater Hartford Orthopedic Group*, *P.C.*, supra, 325 Conn. 210 n.9.

In the present case, the plaintiff failed to provide the city with notice of its theory of liability concerning fire code violations in the warehouse in all iterations of the complaint preceding the proposed June, 2018 complaint. Thus, even if the plaintiff described this theory in its response to an interrogatory, this response alone is insufficient for it to relate back for purposes of compliance with the statute of limitations.

Second, *nothing* contained in the interrogatory response to which the plaintiff points would put the city on notice that the plaintiff's theory of liability had shifted to undiscovered code violations resulting in a minor fire turning into a conflagration. Instead, in response to the city's interrogatory, which asked the plaintiff to set forth its legal basis for its claim against the city, the plaintiff merely described the theory of liability that it set forth prior to the proposed June, 2018 complaint. Indeed, in its response, the plaintiff mentions the city's failure to inspect its warehouse, which, it asserts, resulted in the city's failing to use "foam as opposed to water" in extinguishing the fire, and the city's failure to "[develop plans to address] fires and other emergencies."

In sum, having construed the iterations of the plain-

tiff's complaint broadly and realistically and having compared the new theory of liability in the proposed June, 2018 complaint to the theory alleged in prior versions of the complaint, we conclude that the proposed June, 2018 complaint did not relate back for purposes of the statute of limitations.[26] Because this theory was barred by the statute of limitations, we conclude that the trial court properly rendered summary judgment in favor of the city.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff also named the following individuals as defendants: Brian Rooney, individually and in his capacity as the former fire chief; William Cosgrove, individually and in his capacity as the former fire marshal; Scott T. Appleby, individually and in his capacity as the Director of Emergency Management and Homeland Security; and Terron Jones, individually and in his capacity as Deputy Director of Emergency Management and Homeland Security. On November 21, 2017, however, the plaintiff withdrew the underlying action as against these defendants.

In addition, the city filed an apportionment complaint, alleging that the plaintiff's lessees, Rowayton Trading Company and JWC Roofing and Siding Company, also known as Jim Waters Corp., would be liable for a proportionate share of the plaintiff's damages if the city were found liable to the plaintiff. The apportionment defendants have not participated in this appeal.

[2] General Statutes § 52-557n (b) (8) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, *unless the political subdivision had notice of such a violation of law or such a hazard* or *unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances* . . . ." (Emphasis added.)

[3] The original complaint contained four other counts. Count two of the complaint sounded in nuisance and counts three, four, and five stated that the city was obligated to indemnify the individual defendants; see footnote 1 of this opinion; for their liability pursuant to General Statutes §§ 7-101a, 7-308, and 7-465.

[4] In its request to revise the original complaint, the city requested the following: "[T]hat, [with respect to paragraph 11 of the complaint], the plaintiff . . . stat[e] specifically the authority which the plaintiff is quoting. This revision is necessary in order to determine whether the plaintiff has cited a city charter provision, ordinance, regulation, rule, policy, or any other directive. . . .

"[With respect to paragraph 18 of the complaint], that the plaintiff stat[e] the citation of the authority which mandates a protocol for firefighting, as required by Practice Book § 10-3. . . .

"[With respect to paragraph 41 of the complaint] that the plaintiff delete this paragraph in accordance with Practice Book § 10-1 fact pleading), [Practice Book §] 10-20 (contents of complaint), as this paragraph pleads only evidence. . . .

"[With respect to paragraph 47 of the complaint] that the plaintiff revise each specification of negligence by stating whether it violated a city charter provision, ordinance, regulation, rule, policy, or any other directive. . . . This revision is necessary in order to determine whether the duty allegedly breached was ministerial or discretionary and to determine whether the [city] should plead the defense of governmental immunity. . . . [This revision] is also necessary for the [city] to move to strike the complaint on the basis of governmental immunity. . . ." (Citations omitted; internal quotation marks omitted.)

[5] Practice Book § 10-37 (a) provides: "Any such request [to revise], after

service upon each party as provided by Sections 10-12 through 10-17 and with proof of service endorsed thereon, shall be filed with the clerk of the court in which the action is pending, and such request shall be deemed to have been automatically granted by the judicial authority on the date of filing and shall be complied with by the party to whom it is directed within *thirty days* of the date of filing the same, unless within *thirty days* of such filing the party to whom it is directed shall file objection thereto." (Emphasis added.)

The city moved for nonsuit pursuant to Practice Book §§ 10-18, 17-19, and 17-31. Practice Book § 10-18 provides that "[p]arties failing to plead according to the rules and orders of the judicial authority may be nonsuited or defaulted, as the case may be. (See General Statutes § 52-119 and annotations.)"

Practice Book § 17-19 provides that "[i]f a party fails to comply with an order of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority."

Practice Book § 17-31 provides in relevant part that "[w]here either party is in default by reason of failure to comply with Sections 10-8, 10-35, 13-6 through 13-8, 13-9 through 13-11, the adverse party may file a written motion for a nonsuit or default or, where applicable, an order pursuant to Section 13-14. . . ."

[6] In paragraph 47 of the September, 2016 complaint, unlike paragraph 47 of the original complaint, the plaintiff alleged that the city's negligence represented a reckless disregard for safety. Specifically, in the September, 2016 complaint, the plaintiff alleged that, "[p]ursuant to [§] 52-557n, the [city was] negligent for failure to inspect and prepare [for] a fire at the subject property even though the hazard information was provided to them. This negligence represents a reckless disregard for safety . . . ."

[7] Paragraph 41 of the plaintiff's original complaint states: "Defendant City of Bridgeport's then head of economic development, David Kooris, estimated that the fire [in the plaintiff's warehouse] left about fifty people out of work: 'It's probably the first commercial fire in a long time that displaced companies and workers,' referring to other blazes in vacant buildings."

[8] The September, 2016 complaint alleged that the city was negligent in one or more of the same twelve ways that it had alleged in paragraph 47 of the original complaint. For comparison, in paragraph 47 of the December, 2016 complaint, the plaintiff alleged that the "[d]efendant . . . [was] negligent in one or more of the following ways: (1) failure to have [the information about the warehouse's contents] immediately available in violation of department written policy, directive and standard custom; (2) failure to implement and utilize Computer Aided Management of Emergency Operations (CAMEO) developed by the U.S. Department of Commerce in violation of department written policy, directive and standard custom; (3) failure to extinguish fire from chemicals in accordance with [the prescribed] methods [stated in the information about the warehouse's contents, which was] in violation of department written policy, directives, and standard custom; (4) failure to use [prescribed] foam in violation of department written policy, directives and standard custom; (5) failure to abide by [the] proscription for those media unsuitable to extinguish a fire for certain chemicals [stated in the information about the warehouse's contents, which was] in violation of written department policies, directives and standard custom; and/or (6) failure to inspect the facility and [develop a plan] [for extinguishing a potential fire] with [Rowayton, who] stored and used chemicals [and] would have identified specific concerns for the facility . . . to prepare effectively for those concerns, or to reduce existing risks, in violation of state statute, written department policies, directives and standard custom."

[9] In its request to revise the December, 2016 complaint, the city requested the following: "[T]hat the plaintiff state the statute allegedly violated in paragraph 47 (6) [because] Practice Book § 10-3 (a) requires that '[w]henever any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number' [and] so that the [city] may test the legal sufficiency of [the] allegation [made in paragraph 47 (6) of the complaint] pursuant to a motion to strike based on governmental immunity. . . .

"[With respect] to each subparagraph of paragraph 47, [that the plaintiff set] forth the department written policy [and] directive allegedly violated and . . . describ[e] the standard custom allegedly violated . . . so that the [city] may test the legal sufficiency of [these] allegation[s] pursuant to a motion to strike based on governmental immunity." (Internal quotation

marks omitted.)

[10] In addition to responding to the city's first motion for summary judgment by filing its September, 2017 complaint, the plaintiff also objected to the city's motion for summary judgment on November 9, 2017.

[11] Neither party disputes that, at this hearing, the court determined that the proposed September, 2017 complaint had become the operative complaint.

[12] In light of the plaintiff having filed the September, 2017 amended complaint, the court determined that no action was necessary on the city's first motion for summary judgment.

[13] The proposed September, 2017 complaint contained two other counts. Count two alleged that individual defendants Scott T. Appleby and Terron Jones were liable for their reckless failure to communicate information about the chemicals inside the warehouse to the firefighters working to extinguish the September 11, 2014 fire. The plaintiff, however, at the November 13, 2017 hearing, stated that it was withdrawing its action against these two defendants and filed a withdrawal of action on November 21, 2017 stating as much. See footnote 1 of this opinion. Moreover, this count did not appear again in the proposed June, 2018 complaint.

Count three of this complaint alleged that the city was obligated to indemnify Appleby and Jones for their liability pursuant to General Statutes §§ 7-465 and 7-301 et seq. This count, too, did not appear in the proposed June, 2018 complaint.

[14] In response to this new theory of liability, the court observed that "the plaintiff feels that [it] doesn't have any claim other than [the new allegations set forth in the proposed June, 2018 complaint] because otherwise that additional language wouldn't have been inserted . . . into the revised complaint."

[15] Practice Book § 10-60 provides: "(a) Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file an amendment together with: (A) the amended pleading or other parts of the record or proceedings, and (B) an additional document showing the portion or portions of the original pleading or other parts of the record or proceedings with the added language underlined and the deleted language stricken through or bracketed. The party shall file the request and accompanying documents after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. If no party files an objection to the request within fifteen days from the date it is filed, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sections 10-12 through 10-17 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list.

"(b) The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If the amendment occasions delay in the trial or inconvenience to the other party, the judicial authority may award costs in its discretion in favor of the other party. For the purposes of this rule, a substituted pleading shall be considered an amendment. (See General Statutes § 52-130 and annotations.)"

[16] General Statutes § 52-584 provides in relevant part that "[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[17] Specifically, in addition to asserting that the new theory of liability was barred by the statute of limitations, the city also objected to the proposed June, 2018 complaint for the following reasons: "1. The plaintiff . . . violated the final court-ordered deadline of [May 7, 2018] within which to file a revised pleading . . . .

"2. The revision [to the operative complaint] is being filed well beyond the [April 1, 2018] pleading closure deadline fixed in the court's scheduling order . . . and seeks to keep the pleadings open in violation of that order.

"3. Allowing a revised complaint that sets out an entirely new cause of action at this stage for this 2016 lawsuit stemming out of a [September 11, 2014] fire is highly prejudicial to the [city] and will . . . significantly delay the trial of this case because" the city would have to conduct new discovery, an additional investigation, and file a third motion for summary judgment in order "to address the newly pleaded allegations and claims in the [June, 2018] complaint."

[18] Because the plaintiff's lead counsel was unable to attend the June 18, 2018 hearing, an attorney, who previously had filed an appearance in the case, attended in his place. This attorney, however, was unprepared for the hearing, noting that he had learned of the proposed June, 2018 complaint the morning of the hearing and that he "had just a few minutes to review . . . the [city's] motion for summary judgment." ] In light of his unpreparedness, the attorney "ask[ed] . . . the court [to] allow a short continuance [so that the plaintiff's lead counsel could] address [the] issues" pertaining to the proposed June, 2018 complaint and the city's motion for summary judgment. The court agreed to continue the June 18, 2018 hearing until June 25, 2018.

The plaintiff then moved to continue the June 25, 2018 hearing three days prior to the hearing. The city objected to this motion, and the court never granted a continuance. The plaintiff's lead counsel failed to attend the June 25, 2018 hearing, and the same attorney appeared in his place. This attorney stated that the plaintiff's lead counsel was unable to attend the hearing because "he [was] on a preplanned family vacation . . . ."

[19] The *Williams* case arose "out of a tragic fire in which four residents of a Bridgeport public housing complex . . . lost their lives. The plaintiff . . . as administratrix of the estate of each decedent [sued] the Bridgeport Fire Department and five Bridgeport city officials . . . ." *Williams* v. *Housing Authority*, supra, 327 Conn. 341. "In her revised complaint, the plaintiff alleged, among other things, that the municipal defendants failed to ensure that [the] unit [in which the fire started] complied with state building and fire safety codes, failed to remedy numerous defects in [this] unit . . . and failed to conduct an annual fire safety inspection of [this] unit . . . as required by § 29-305. The plaintiff specifically alleged that the municipal defendants knew or should have known about and remedied a number of asserted defects in [this] unit . . . including the absence of fire escapes or other adequate means of egress, photoelectric smoke detectors, fire alarm systems, fire suppression systems, fire sprinklers, fire extinguishers, and fire safety or prevention plans. [Moreover, the plaintiff] alleged that such conduct on the part of the municipal defendants was both negligent and reckless." Id., 345.

[20] The city's preliminary statement of issues on appeal contained in relevant part: "1. Did the trial court abuse its discretion in overruling the [city's] objection to the plaintiff's request for leave to amend to file the amended complaint of September 5, 2017, where that complaint was filed beyond the statute of limitations and was otherwise untimely?

"2. Did the trial court abuse its discretion in considering the plaintiff's revised complaint filed June 18, 2018 . . . where that complaint was barred by the statute of limitations, filed the morning of argument on [the city's] motion for summary judgment and filed in violation of the scheduling order?"

[21] In its appellate brief, the plaintiff acknowledges that "[t]he operative complaint at present is a matter [that] the [city] has called into question," but it also asserts that the trial court determined that the proposed June, 2018 complaint was the operative complaint when the court adjudicated the city's second motion for summary judgment. Moreover, in its reply brief, the plaintiff stated that "[i]t is folly for the [city] to claim . . . that [the June, 2018] complaint was not operative" and noted that "the [city] [undertook] some impressive maneuvers to make the [June, 2018] complaint inoperable in the instant appeal."

[22] Practice Book § 10-60 (a) provides in relevant part: "Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner: . . . (3) By filing a request for leave to file an amendment together with: (A) the amended pleading or other parts of the record or proceedings, and (B) an additional document showing the portion or portions of the original pleading or other parts of the record or proceedings with the added language underlined and the

deleted language stricken through or bracketed. The party shall file the request and accompanying documents after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. . . .”

Practice Book § 10-12 (a) provides in relevant part: “It is the responsibility of counsel or a self-represented party filing the same to serve on each other party who has appeared one copy of every pleading subsequent to the original complaint . . . and every paper relating to . . . request . . . . When a party is represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the judicial authority.”

Practice Book § 10-14 provides in relevant part: “Proof of service pursuant to Section 10-12 (a) and (b) may be made by written acknowledgment of service by the party served, by a certificate of counsel for the party filing the pleading or paper or by the self-represented party, or by affidavit of the person making the service, but these methods of proof shall not be exclusive. Proof of service shall include the address at which such service was made. . . .”

[23] The plaintiff’s September 5, 2017 request to amend contained the following certificate of service: “Undersigned certifies that a copy of this request and the amended complaint were sent to City Attorney Bruce Levin who is counsel of record for the defendants on . . . September [3], 2017.”

[24] At the June 18, 2018 hearing, the city’s counsel stated that it received the proposed June, 2018 complaint but that counsel received it no more than two days before the hearing.

[25] We do not mean to suggest that a trial court is obligated to *state explicitly* that it has weighed the considerations that this court described in *Gonzales* v. *Langdon*, supra, 161 Conn. App. 509–10, 518, in order to determine whether to grant a plaintiff leave to amend his or her complaint. In the present case, however, because the plaintiff failed to properly seek leave to amend its complaint and the court was silent with respect to these considerations and did not explicitly state that it would grant the plaintiff leave to amend, we decline to infer that the court granted the plaintiff leave to amend its complaint.

[26] As previously stated, the plaintiff, on appeal, claims *only* that the trial court improperly granted summary judgment for the city based on the new theory of liability set forth in the proposed June, 2018 complaint. The plaintiff *does not* claim on appeal that the trial court improperly rendered summary judgment based on the theory set forth in iterations of the complaint prior to the proposed June, 2018 complaint, to the extent that the court rendered summary judgment in favor of the city based on this theory.