******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONALD BRIERE ET AL. *v.* GREATER HARTFORD
ORTHOPEDIC GROUP, P.C., ET AL.
(SC 19576)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 15, 2016—officially released April 11, 2017*

*Lorinda S. Coon*, with whom was *John W. Sitarz*, for the appellants (defendants).

*Ron Murphy*, with whom was *Roger Kaye*, for the appellees (plaintiffs).

*Roy W. Breitenbach* and *Michael J. Keane, Jr.*, filed a brief for the Connecticut Orthopaedic Society as amicus curiae.

*Claire V. Jackson* and *Michael G. Rigg* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*James J. Healy* and *Cynthia C. Bott* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ROGERS, C. J. In this certified appeal, we are tasked with clarifying the contours of the relation back doctrine, specifically as applied to medical malpractice claims.[1] The plaintiff, Donald Briere,[2] brought a cause of action against the defendants, Greater Hartford Orthopedic Group, P.C. (practice group), and David Kruger, an orthopedic surgeon, alleging medical malpractice during a spinal surgery resulting in the plaintiff suffering quadriparesis. After the expiration of the relevant statute of limitations, General Statutes § 52-584,[3] the plaintiff sought to amend his complaint. Both the original and amended complaints included claims that Kruger failed to properly plan and to perform the surgery through the use of an instrumentality in his control. The plaintiff's original complaint, however, included detailed allegations of the improper usage of a skull clamp. In his proposed amended complaint, however, the plaintiff replaced those detailed allegations with allegations of the improper use of a retractor blade. The trial court denied the request to amend, narrowly construing the original complaint as limited to a claim of the negligent usage of the skull clamp and subsequently granted the defendants' motion for summary judgment because the plaintiff had abandoned the theory that negligent use of the skull clamp had caused his injury. The Appellate Court reversed the trial court's denial of the plaintiff's request to amend, broadly construing the original complaint as a claim of negligence in performing the surgery, which could be supported by either set of factual allegations. *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 158 Conn. App. 66, 118 A.3d 596 (2015). The defendants advocate for this court to adopt the narrower approach used by the trial court and to reverse the judgment of the Appellate Court. We decline to do so and affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to this appeal. In November, 2009, the plaintiff initiated a cause of action against the defendants for injuries he suffered during a spinal surgery performed on May 21, 2008.[4] In count one of the complaint, the plaintiff alleged that Kruger had failed to plan or to perform a safe and effective operation. The plaintiff made additional allegations in count one that Kruger was negligent in his use of a skull clamp to secure the plaintiff during the surgery.[5] At the time that he filed his complaint, the plaintiff also filed a petition for an automatic extension of the statute of limitations. The trial court granted the petition, extending the expiration of the statute of limitations from May 21, 2010 to August 19, 2010.

Six months before the expiration of the statute of limitations, the defendants filed a request to revise, in which they sought a more complete or particular

statement of how Kruger had failed to plan or to perform a safe and effective surgery. The plaintiff objected to the request to revise, asserting that the allegations were not conclusory and that the proper mechanism to procure a more specific statement was through discovery. Prior to the expiration of the statute of limitations, the trial court, *Holzberg*, *J.*, sustained the plaintiff's objection.

Subsequently, the plaintiff disclosed James Macon, a neurosurgeon, as an expert witness and indicated that Macon would testify that Kruger had been negligent when he improperly placed a retractor blade during surgery. The defendants deposed Macon five months after he was disclosed as an expert.

The plaintiff then filed a request for leave to file an amended complaint. In the proposed amended complaint, the plaintiff removed the allegations related to the skull clamp and added allegations that Kruger had failed to properly apply a retractor blade during surgery. The defendants objected to the request on the ground that the allegations concerning the retractor blade were new allegations and did not relate back to the original pleading, and therefore were barred by the statute of limitations. In a written memorandum of decision, the trial court, *Aurigemma*, *J.*, sustained the defendants' objection.

Subsequently, the defendants moved for summary judgment on the ground that the plaintiff could not prove medical negligence under the original complaint because he had not disclosed an expert who could testify concerning the skull clamp. Prior to responding to the defendants' motion for summary judgment, the plaintiff filed a motion in limine asking the trial court to rule on whether it would admit Macon's expert testimony on the retractor blade theory at trial in light of the court's denial of the plaintiff's request to amend the complaint to include the retractor blade allegations. In response to the motion in limine, the trial court, *Aurigemma*, *J.*, ruled that it would not admit Macon's testimony at trial. The plaintiff then filed a memorandum in opposition to the motion for summary judgment in which he argued that the trial court's denial of his request to amend and its ruling on the motion in limine were inconsistent with the trial court's previous ruling sustaining the plaintiff's objection to the defendants' request to revise, and that the rulings were fundamentally unfair. The plaintiff did not submit affidavits or other evidence that created a genuine issue of material fact concerning the negligent usage of the skull clamp. Judge Aurigemma rendered summary judgment in favor of the defendants on all counts on the ground that the plaintiff did not have an expert who could testify that improper skull clamp usage caused his injuries, which were the specific allegations in the complaint.[6] Judge Aurigemma noted that her decision was dependent

upon her previous denial of the plaintiff's request to amend the complaint.

The plaintiff appealed to the Appellate Court. See id. The Appellate Court reversed the trial court's denial of the plaintiff's request to amend and its subsequent summary judgment rendered in favor of the defendants on the ground that the trial court improperly applied the relation back doctrine. Id., 68. Specifically, the Appellate Court held that the retractor blade allegations related back to the original theory that Kruger was negligent during the surgery, as found in the allegations that Kruger had failed to plan or to perform a safe and effective surgery. Id., 78. This appeal followed.

The defendants claim that the Appellate Court improperly interpreted the allegations in the original complaint that Kruger failed to properly plan or to perform the surgery as independent from the allegations that he failed to properly use the skull clamp. Under this state's fact based pleading requirements, the defendants assert, the planning and performance allegations cannot stand alone because they are conclusory in nature and merely introduce the skull clamp allegations that form the factual basis for the plaintiff's claim. They further assert that the Appellate Court improperly interpreted the res ipsa locquitor allegations; see footnote 4 of this opinion; as support for a theory of negligence beyond improper skull clamp placement in the original complaint. The defendants claim that when the original complaint is properly read as a claim that Kruger improperly used the skull clamp during surgery, then the proposed amended allegations regarding the retractor blade do not relate back because they are an entirely different theory of negligence.[7]

The plaintiff asserts that the Appellate Court properly interpreted the original complaint as a theory that Kruger negligently planned and performed the surgery in one or more ways. He claims that the original allegations provided fair notice to the defendants that his theory of negligence related to Kruger's conduct during the surgery. The plaintiff further asserts that within the context of a medical malpractice case, where the plaintiff may not be able to discover the precise manner in which the defendant was negligent until after the parties engage in discovery, it would be unjust to hold a plaintiff to as narrow a pleading standard as the defendants advocate.

We begin by setting forth the proper standard of review and applicable legal principles. "[T]he de novo standard of review is always the applicable standard of review for resolving whether subsequent amendments to a complaint relate back for purposes of the statute of limitations."[8] (Emphasis omitted.) *Sherman* v. *Ronco*, 294 Conn. 548, 554 n.10, 985 A.2d 1042 (2010).

"The relation back doctrine has been well established

by this court." *Alswanger* v. *Smego*, 257 Conn. 58, 64, 776 A.2d 444 (2001). There is a " 'well settled' body of case law holding that 'a party properly may amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same. . . . If a new cause of action is alleged in an amended complaint . . . it will [speak] as of the date when it was filed. . . . A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . *A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . .* It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but [when] an entirely new and different factual situation is presented, a new and different cause of action is stated.' . . . *DiLieto* v. *County Obstetrics & Gynecology Group*, *P.C.*, 297 Conn. 105, 140, 998 A.2d 730 (2010)." (Emphasis in original; footnote omitted.) *Finkle* v. *Carroll*, 315 Conn. 821, 837–38, 110 A.3d 387 (2015).

"Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . . *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 263–64, 654 A.2d 748 (1995)." (Internal quotation marks omitted.) *Alswanger* v. *Smego*, supra, 257 Conn. 65. "[I]n the cases in which we have determined that an amendment does not relate back to an earlier pleading, the amendment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding upon previous allegations." *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 560, 51 A.3d 367 (2012).

More specifically, where the proposed allegations promote a change in or an addition to a ground of negligence arising out of a single group of facts we have allowed use of the relation back doctrine. *Gurliacci* v. *Mayer*, 218 Conn. 531, 549, 590 A.2d 914 (1991) ("new allegations did not inject two different sets of circumstances and depend on different facts . . . but rather amplified and expanded upon the previous allegations by setting forth alternative theories of liability" [citation omitted; internal quotation marks omitted]); see *DiLieto* v. *County Obstetrics & Gynecology Group*, *P.C.*, supra, 297 Conn. 139–43 (allegation that defendant physician failed to ensure that specific surgeon participated in surgery related back to allegation that defen-

dant physician failed to communicate pathology results to that surgeon prior to surgery); *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 119, 788 A.2d 83 (2002) (allegation that forklift was defective because backup alarm failed to sound when forklift was engaged in reverse did relate back to allegations that forklift was defective because it lacked, inter alia, backup alarm that sounded sufficiently distinct to warn plaintiff); *Barnicoat* v. *Edwards*, 1 Conn. App. 652, 654, 474 A.2d 808 (1984) (allegations of different defects in house construction related back to other claims of defect in house construction in breach of contract claim); *Miller* v. *Fishman*, 102 Conn. App. 286, 299–300, 925 A.2d 441 (2007) (allegations describing specific manner in which defendant obstetrician delivered minor plaintiff and precise injuries minor plaintiff sustained related back to allegations that defendant negligently managed delivery of minor plaintiff), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008). On the other hand, where new allegations *directly contradict* those in the operative complaint we have held that they do not relate back to those in the operative complaint. *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 806–808, 945 A.2d 955 (2008) (allegation that defendant surgeons used incorrect spinal fusion material during surgery contradicted, and therefore did not relate back to, allegation that surgeons should not have performed surgery at all on plaintiff); see also *Alswanger* v. *Smego*, supra, 257 Conn. 61 (allegation of lack of informed consent regarding surgical resident's participation in surgery did not relate back to allegation that defendant physician and defendant hospital had failed to disclose all material risks in connection with plaintiff's surgery, care and treatment); *Keenan* v. *Yale New Haven Hospital*, 167 Conn. 284, 285–86, 355 A.2d 253 (1974) (allegation of lack of informed consent to surgery did not relate back to allegation of negligence in performing surgery).

"When comparing [the original and proposed amended] pleadings, we are mindful that, '[i]n Connecticut, we have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension.' . . . *Deming* v. *Nationwide Mutual Ins. Co.*, [279 Conn. 745, 778, 905 A.2d 623 (2006)]." *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*,

supra, 286 Conn. 802.

We acknowledge that in our prior cases applying the relation back doctrine we perhaps have not provided as much clarity as necessary for the trial court to apply the doctrine consistently. After a careful review of our case law, it is apparent that in order to provide fair notice to the opposing party,[9] the proposed new or changed allegation of negligence must fall within the scope of the original cause of action, which is the *transaction or occurrence* underpinning the plaintiff's legal claim against the defendant. Determination of what the original cause of action is requires a case-by-case inquiry by the trial court. In making such a determination, the trial court must not view the allegations so narrowly that any amendment changing or enhancing the original allegations would be deemed to constitute a different cause of action. But the trial court also must not generalize so far from the specific allegations that the cause of action ceases to pertain to a specific transaction or occurrence between the parties that was identified in the original complaint. While these guidelines are still broad, a bright line rule would not serve the purpose of promoting substantial justice for the parties.[10]

If new allegations state a set of facts that contradict the original cause of action, which is the transaction or occurrence underpinning the plaintiff's legal claim against the defendant, then it is clear that the new allegations do not fall within the scope of the original cause of action and, therefore, do not relate back to the original pleading. But an absence of a direct contradiction must not end the trial court's inquiry. The trial court must still determine whether the new allegations support and amplify the original cause of action or state a new cause of action entirely. Relevant factors for this inquiry include, but are not limited to, whether the original and the new allegations involve the same actor or actors, allege events that occurred during the same period of time, occurred at the same location, resulted in the same injury, allege substantially similar types of behavior, and require the same types of evidence and experts.

In the present case, the plaintiff alleged in paragraph 36 of count one of the original complaint that Kruger was negligent in one or more of the following ways:

"A. [He] failed to plan a safe and effective operation.

"B. [He] failed to perform a safe and effective operation.

"C. [He] failed to position [the plaintiff] safely and securely on the operating table; and/or

"D. [He] failed to make sure the skull clamp was safely and securely applied to [the plaintiff's] skull; and/or

"E. [He] failed to make sure the locking device connecting the skull clamp to the [operating room] table was safely and securely applied; and/or

"F. [He] failed to make sure that [the plaintiff's] positioning [in the surgical table apparatus] was safe and secure; and/or

"G. [He] failed to make sure that [the plaintiff] would not move during the surgery."

In support of his res ipsa locquitor claim, the plaintiff additionally alleged in paragraph 36 of count three of the original complaint that his injury could be presumed to be due to the defendants' negligence because:

"A. The damage to [the plaintiff's] spinal cord at [C3 through C5] is ordinarily not seen in the course of surgery at [C6 through C7] in the absence of someone's negligence.[11]

"B. The injuries were caused by an instrumentality solely within the defendants' control;

"C. The injury was not due to any voluntary action or contribution by [the plaintiff]; and

"D. The explanation of the event is more accessible to the defendants than to [the plaintiff]." (Footnote added.)

In his proposed amended complaint, the plaintiff replaced the allegations of negligence in count one of the original complaint with the following allegations found in paragraph 45 of count one of the amended complaint:

"A. [Kruger] failed to plan a safe and effective operation, and/or

"B. [He] failed to perform a safe and effective operation, and/or

"C. [He] failed to apply the retractor at [C3 through C4] properly, and/or

"D. [He] failed to apply the retractor at [C3 through C4] properly so that the blades would not shift when the retractor was opened.

"E. The operative note is not a reasonably complete and accurate account of what happened during surgery.

"F. The discharge summary is not a reasonably complete and accurate account of what happened during [the plaintiff's] hospitalization."

The relevant allegations in the res ipsa locquitor claim contained in count three of the amended complaint remained the same as the allegations from the original complaint.

In construing the original complaint, we hold that the plaintiff's cause of action is that Kruger negligently performed spinal surgery on the plaintiff, resulting in

the plaintiff's injuries. While count one of the original complaint does focus on improper use of the skull clamp, read as a whole it includes more general allegations that Kruger failed to properly perform the surgery.[12] Further, looking to the original complaint as a whole, the plaintiff provided additional notice of the nature of his cause of action to the defendants through his allegations in the res ipsa locquitor count that his injuries were caused by an instrumentality solely in Kruger's control when he performed the surgery on the plaintiff's spine. At the very least, this additional count put the defendants on notice that the plaintiff's claim was not limited to the skull clamp allegations. Reading the two counts together, the transaction or occurrence that formed the basis of the plaintiff's claim was that Kruger improperly used medical instruments during the plaintiff's spinal surgery, resulting in his injury. Therefore, the plaintiff adequately put the defendants on notice that his claim related to Kruger's conduct during the surgery and, more specifically, his use of medical instruments during the surgery.

The plaintiff's amended complaint added new allegations that Kruger improperly used the retractor blade during surgery and removed the allegations related to the skull clamp. The retractor blade allegations do not contradict the theory that Kruger improperly used medical instruments during surgery. Instead, they constitute a change in and addition to an act of negligence, which is permitted under the relation back doctrine. Specifically, the single transaction or occurrence that constituted the cause of action was the negligent use of medical instruments during the plaintiff's spinal surgery in the operating room by Kruger, and this negligence caused the plaintiff to suffer quadriparesis.[13]

For the foregoing reasons, we conclude that the Appellate Court properly held that the amended complaint related back to the original complaint and that the trial court's denial of the plaintiff's request to amend and its subsequent granting of the defendants' motion for summary judgment should be reversed.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, EVELEIGH, McDONALD and ESPINOSA, Js., concurred.

[1] We granted the petition by the defendants, Greater Hartford Orthopedic Group, P.C., and David Kruger, for certification on the following questions: "1. Did the Appellate Court properly determine that the trial court misapplied the relation back doctrine when it refused to allow the plaintiff [Donald Briere] to amend the complaint?" and "2. Did the Appellate Court properly determine that the trial court did not abuse its discretion when it sustained the plaintiff's objection to the defendants' request to revise?" *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 319 Conn. 950, 950–51, 125 A.3d 529 (2015).

[2] The complaint was brought by Donald Briere and his wife, Nancy Briere. Nancy Briere's claims are for loss of consortium, which are derivative of Donald Briere's negligence claims. Therefore, for purposes of clarity and convenience, references herein to the plaintiff are to Donald Briere individually.

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by

malpractice of a . . . surgeon . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[4] Count one alleged negligence against Kruger. Count two alleged negligence under a theory of vicarious liability against the practice group. Count three alleged negligence against both defendants pursuant to a claim of res ipsa locquitor. Counts four and five alleged loss of consortium on behalf of Nancy Briere against each of the defendants, respectively.

[5] The plaintiff's complaint was accompanied by a certificate of good faith and a supporting letter from a similar health-care provider in which a board certified orthopedic surgeon opined that Kruger had been negligent in failing to properly secure the plaintiff's head in the skull clamp, causing it to move during surgery, and resulting in his injuries. The defendants assert that the lack of any allegations concerning the retractor blade in the similar health-care provider letter supports a conclusion that the original cause of action was limited to the skull clamp. We are not persuaded. The purpose of requiring a letter by a similar health-care provider is to help eliminate some of the more questionable and meritless claims of medical malpractice. *Wilcox* v. *Schwartz*, 303 Conn. 630, 641, 37 A.3d 133 (2012). That purpose is served when the similar health-care provider is able to opine that the defendant breached the applicable standard of care and state the factual basis upon which the author believes that standard of care was breached; it does not require a detailed recitation of the method in which the breach occurred. Id., 643–44; id., 644 ("[This] interpretation of [General Statutes] § 52-190a [a] . . . represents an appropriate balance between the two primary competing considerations identified by the legislature, namely, the need for enough specificity to support a good faith belief of the existence of medical negligence, on the one hand, and the fact that, at the time the written opinion is issued, the plaintiff will not yet have had the opportunity to engage in any formal discovery into the alleged malpractice, on the other. Although, in some cases, a more comprehensive explanation of the defendant's alleged negligence will be possible, a blanket requirement mandating a more onerous or stringent standard would serve to deter not only frivolous lawsuits but some meritorious ones, as well, a result that the legislature did not intend to achieve."). Therefore, a plaintiff should not be barred from amending a complaint to add specific allegations regarding how the defendant breached the standard of care merely because the similar health-care provider did not discuss those facts in his opinion letter.

[6] The defendants' motion for summary judgment was initially granted in part and denied in part by the court, *Domnarski, J.*, whose denial was based in part on the deposition testimony of Macon. Due to the conflict between Judge Aurigemma's granting of the motion in limine to exclude Macon's testimony and Judge Domnarski's denial of the motion for summary judgment based upon the deposition of Macon, the defendants moved for the court to vacate the summary judgment ruling and to refer the matter to Judge Aurigemma for reargument. After discussion on the record with Judge Aurigemma, the plaintiff reluctantly stipulated to having Judge Domnarski vacate his ruling, and the motion for summary judgment was transferred to Judge Aurigemma.

[7] The defendants also challenge the ruling of Judge Holzberg sustaining the plaintiff's objection to their request to revise seeking more specific factual allegations of how Kruger negligently planned and performed the surgery. If the defendants were to prevail on this claim, the remedy would be to reverse the trial court's denial of their request to revise and remand the case to the trial court to allow the plaintiff to revise the complaint. Because we conclude that Judge Aurigemma should have allowed the plaintiff to amend his complaint, we do not reach the issue of whether the trial court should have required the plaintiff to do so at an earlier time.

[8] We acknowledge, as noted by Justice Robinson in his concurrence, that this court has previously stated that the standard of review is not settled. We disagree, however, with the approach advanced by Justice Robinson insofar as it blends the standard of review for whether an amended pleading relates back to an earlier pleading with the standard of review for whether to allow a party to amend the pleading. If the statute of limitations has expired and an amended pleading does not relate back to the earlier pleading, then the trial court has no discretion to allow an amendment. While the determination of whether a pleading relates back involves the issue of fair notice and may require a trial court to find, among other things, whether the original and amended complaint require similar evidence and experts,

such determination is grounded in interpretation of the pleadings and is not the type of determination that a trial court is in a better position to make than an appellate court. Therefore, whether a pleading relates back is subject to plenary review. Where an amended pleading does relate back to an earlier pleading, the trial court may look to other factors, including the length of the delay, prejudice to the opposing party, and any negligence on the part of the party offering the amendment, to decide whether to allow the amendment. We agree with Justice Robinson that once the trial court finds that a pleading relates back, its decision whether to allow an amendment is subject to an abuse of discretion standard of review. In the present case, however, because the trial court denied the plaintiff's request for leave to file his amended complaint on the basis that the amended complaint did not relate back to the original complaint, we engage in plenary review.

[9] We note that the original pleading itself must provide the opposing party with notice of a cause of action that encompasses the proposed amended allegations. Insofar as the plaintiff in the present case advocates for this court to look to the discovery history to show the existence of notice to the defendant of the retractor blade theory, we reject this approach. A plaintiff may not rely solely on disclosures made during discovery to overcome his failure to plead a cause of action prior to the expiration of the statute of limitations that he later decides is a better claim. The plaintiff's concern that a defendant could prevent a plaintiff from bringing a legitimate cause of action by delaying discovery until after the expiration of the statute of limitations is addressed by the fact that a defendant's intentional concealment of his wrongful conduct tolls the statute of limitations. See General Statutes § 52-595.

[10] While we acknowledge the defendants' concern that a broad application of the relation back doctrine will encourage plaintiffs to make mere general accusations in their original complaint, such concern is already addressed in our rules of practice. Nothing in our decision today prevents a defendant from exercising his rights under Connecticut motion practice, including requests to revise and motions to strike, when a plaintiff makes mere conclusory allegations without any factual support in his complaint.

[11] The references herein to C3, C4, C5, C6 and C7 are to the sections of vertebrae located on one's spinal cord.

[12] We note that the defendants requested that the plaintiff revise the original complaint to include specific facts to support the allegation that Kruger failed to perform a safe and effective operation on the ground that the performance allegation was conclusory. By asking for a more detailed basis for the allegation that Kruger failed to properly perform the surgery, the defendants indicated that they were aware that in count one the plaintiff was making a broader claim than just the improper use of the skull clamp.

[13] In reaching this conclusion, we have considered whether the new retractor blade allegations would have required different evidence or experts than the original allegations. We note that the plaintiff's expert, Macon, was disclosed as a "board certified neurosurgeon with extensive experience in the kind of surgery performed on [the plaintiff] by orthopedic spine surgeon . . . Kruger," and this disclosure was not limited to Macon being an expert on retractor blade usage. At the time that the plaintiff moved to amend his complaint, the defendants had not yet disclosed their experts. We are mindful that whether new allegations require new evidence or experts must always be determined on a case-by-case basis and in other circumstances may weigh heavily against a finding that a new allegation relates back to the original complaint.