******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHRISTOPHER RODRIGUEZ *v.*
CITY OF HARTFORD ET AL.
(AC 45807)

Moll, Cradle and Bear, Js.

*Syllabus*

The plaintiff, as parent and next friend of her minor son, C, sought to recover damages from the defendants, the city of Hartford and D, the city forester, for injuries sustained by C when a tree fell on him while he was playing at a basketball court located in a city park. Eleven days before C was injured, D had visually inspected the tree at issue, which was located approximately twenty feet from the basketball court at the park. She determined that the tree did not constitute an immediate public hazard but designated the tree for removal by posting a sign on the tree allowing ten days for public comment, pursuant to a city ordinance (§ 26-11) and the statute (§ 23-59) governing the duties of tree wardens. The plaintiff's three count complaint included allegations of negligence against the city and D. The plaintiff alleged, inter alia, that the defendants were negligent in failing to adequately inspect the tree at issue and remove it. In their answer and special defenses, the defendants alleged that the plaintiff's negligence claims were barred by the doctrine of governmental immunity. Several months later, the defendants filed a motion for summary judgment, arguing that they were entitled to governmental immunity on the negligence claims because all of the allegations involved public duties that were discretionary as a matter of law. More than two years later, the plaintiff filed an objection to the motion for summary judgment wherein she argued that the defendants violated their ministerial duties as to the inspection and removal of the tree at issue. On that same day, the plaintiff also filed a request to amend her complaint, seeking to add one count asserting common-law recklessness, alleging the failure to conduct an inspection of the tree that fell on C. The plaintiff represented that her proposed new count of recklessness related back to her original complaint in that the factual basis for the claim of recklessness had not changed and the new claim merely amplified and expanded upon the allegations in the original complaint by setting forth an alternative theory of liability. The defendants filed an objection to the request to amend, arguing that, because their motion for summary judgment had been fully briefed and there was a trial date already assigned, granting the plaintiff's request to amend to include an additional count that raised a new basis of liability would prejudice them. The trial court denied the plaintiff's request to amend, finding that the amendment would considerably delay the proceedings, that it asserted claims not raised in the complaint that was the subject of the pending summary judgment motion, and that the plaintiff had offered no explanation or rationale for the delay in asserting a new claim. Approximately one month later, the court held a hearing on the defendants' motion for summary judgment and the plaintiff's objection thereto, at which the plaintiff's counsel argued that a genuine issue of material fact existed as to whether D's duty to inspect was ministerial or discretionary. The plaintiff subsequently filed a motion for permission to file a supplemental brief to her objection to the motion for summary judgment to argue that the defendants' motion for summary judgment should be denied because the allegations of the original complaint were broad enough to state a nuisance claim and the alleged facts supported a nuisance claim not barred by governmental immunity. The defendants filed an objection arguing that the plaintiff had not, and could not, allege a public nuisance claim against them. Several weeks later, the trial date was continued to a date almost one year after the then scheduled trial date. The plaintiff filed a renewed request to amend her complaint, seeking to add one count for common-law recklessness and one count for public nuisance. In her request, the plaintiff reiterated that the new allegations related back to the allegations in the original complaint and asserted that the new trial date afforded ample time for the defendants to conduct any additional discovery that they deemed necessary. The

defendants filed an objection, arguing that the trial date was continued only to provide the court with time to decide the pending motion for summary judgment and that there was no reason to revisit the trial court's prior ruling denying the plaintiff's first request to amend. The court granted the plaintiff's motion for permission to file a supplemental brief but rejected the argument therein, finding that the factual allegations of the operative complaint did not support a claim for public nuisance as an alternative to the negligence claims that had been clearly pleaded. On that same day, the court denied the plaintiff's renewed request to amend her complaint, ruling that the proposed new counts were filed beyond the applicable statutes of limitations (§§ 52-577 and 52-584) and that the new counts did not relate back to the allegations in the original complaint. The trial court subsequently issued a memorandum of decision granting the defendants' motion for summary judgment and concluding that the allegations of negligence in the plaintiff's complaint clearly related to discretionary functions and, therefore, the defendants were immune from liability both at common law and under the statute (§ 52-557n) providing governmental immunity. On the plaintiff's appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the trial court improperly denied her first request to amend her complaint; when the plaintiff filed that request, the defendants' motion for summary judgment had been pending for more than two years, it had been briefed by both parties, and there was an upcoming trial date, and the trial court's ruling that permitting the amendment would considerably delay the proceedings in light of the upcoming trial date did not reflect an abuse of its discretion.

2. The trial court erred in denying the plaintiff's renewed request to amend her complaint on the basis that the proposed claims of recklessness and public nuisance were barred by §§ 52-577 and 52-584: neither § 52-577 nor § 52-584 establishes a remedy that does not otherwise exist, and, because such statutes of limitations are procedural, not jurisdictional, and the periods of limitation set forth therein could be waived, a trial court may not raise the limitation on its own motion; moreover, because the trial court sua sponte raised the issue of the statutes of limitations and the defendants had not objected to the plaintiff's renewed request to amend her complaint on the ground that the new allegations did not relate back to the allegations of her complaint and were, consequently, beyond the applicable statutes of limitations, the court erred in denying the request.

3. The plaintiff's claim that the trial court erred in rendering summary judgment for the defendants was unavailing:

a. Contrary to the plaintiff's argument, the trial court did not err in concluding that her complaint failed to set forth a claim for public nuisance; although the plaintiff identified certain allegations in her complaint that she claimed set forth a claim of nuisance, specifically, that the defendants allowed C to use the basketball court in the park when they knew or should have known that the tree was rotted or dangerous and continued to maintain the tree with the same defects, those allegations, when read in the context of the entirety of the complaint, did not allege that the defendants created the condition that caused the tree to fall but, rather, that they should have recognized the hazard presented by the tree and remediated it, essentially alleging a failure to act on the part of the defendants, and a failure to act or remediate does not constitute a nuisance.

b. The plaintiff could not prevail on her claim that the trial court erred in concluding that her claims against the defendants were barred by governmental immunity because a genuine issue of material fact existed as to whether the defendants' alleged negligence constituted a violation of a ministerial or discretionary duty: because D determined that the tree at issue in the present case did not pose an immediate public hazard, the plaintiff's claim that § 23-59 imposes a ministerial duty when a tree poses an immediate public hazard was unavailing; moreover, although the plaintiff contended that D violated her ministerial duty to properly inspect the tree at issue, she failed to cite any authority to support her contention that D's duty to inspect the tree at issue was ministerial, and this court has previously held that § 23-59 provides that many, but not all, of the duties of a tree warden involve the exercise of discretion; furthermore, the defendants had not received a complaint or been otherwise notified that the tree at issue was potentially hazardous but, rather, the record reflected that D's inspection of the tree at issue was a matter

of routine, there were no policies or regulations that set forth the manner in which the inspection of a tree must be conducted, and, in the absence of such guidelines, it was clear that the routine inspection involved D's judgment and discretion, and, therefore, the court did not err in concluding that the allegations of the complaint challenged D's discretionary conduct.

Argued November 7, 2023—officially released March 19, 2024

*Procedural History*

Action, inter alia, to recover damages for personal injuries sustained by the plaintiff as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, denied the plaintiff's motions to amend the complaint; thereafter, the court, *Sheridan, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part; further proceedings*.

*Jack G. Steigelfest*, with whom, on the brief, was *Thomas P. Cella*, for the appellant (plaintiff).

*Thomas R. Gerarde*, for the appellees (defendants).

*Opinion*

CRADLE, J. The plaintiff, Carmen Rodriguez, as parent and next friend of her minor son, Christopher Rodriguez (Christopher),[1] appeals from the summary judgment rendered in favor of the defendants, the city of Hartford (city) and Heather Dionne, the city forester, in this action to recover damages for injuries sustained by Christopher when a tree fell on him while he was playing at a basketball court located in a city park. On appeal, the plaintiff claims that the court erred by (1) denying her requests to amend her complaint and (2) concluding that her complaint did not set forth a claim of public nuisance and that no genuine issue of material fact existed as to whether her claims against the defendants were barred by governmental immunity. We conclude that the court properly rendered summary judgment as to the plaintiff's negligence claims but that the court erred in denying one of the plaintiff's requests to amend her complaint. We therefore affirm in part and reverse in part the judgment of the trial court.

The following undisputed facts, as set forth by the trial court, and procedural history are relevant to our resolution of this appeal. "[Dionne] is the city forester for the city of Hartford, a position she has held since 2012. The city forester is charged with the responsibility of carrying out the laws of the state and the ordinances of the city of Hartford with respect to all trees, shrubs or vines in highways, public parks and public grounds within the city. On July 27, 2018, Dionne visually inspected the subject tree at issue in this case. The tree was located approximately twenty feet from a public basketball court at Goodwin Park. Dionne looked at the trunk of the tree, the attachment of the branches to the tree, and the ground around the tree. Dionne observed 'tip dieback' (dying of the tips of branches), thinning of the crown of the tree, small leaf size, and poor root integrity.

"Dionne determined that the tree did not 'constitute an immediate public hazard' and designated the tree for removal by posting a sign on the tree allowing ten days for public comment, pursuant to chapter 26, article I, § 26-11 of the Hartford Code of Ordinances[2] and General Statutes § 23-59.[3]

"Eleven days later, on August 7, 2018, at approximately 6:45 p.m., [Christopher], a ten year old boy, was playing basketball on the basketball court when the tree fell onto the basketball court, crushing his legs and causing other serious injuries." (Footnotes in original.)

The plaintiff thereafter commenced this action on February 11, 2019, and her complaint consisted of three counts. Count one alleged negligence against the city, count two alleged negligence against Dionne, and count three alleged that the city was obligated to indemnify Dionne for any damages caused by her negligence. The plaintiff alleged, inter alia, that the defendants were

negligent in failing to adequately inspect the tree at issue and remove it. The defendants filed an answer and special defenses to the plaintiff's complaint. In their answer, the defendants denied the plaintiff's allegations or left her to her proof. By way of special defense, the defendants alleged that Christopher was contributorily negligent in that he "failed to act as a reasonably prudent person under the circumstances . . . [by] remain[ing] outdoors in a public park during a storm involving rain and high winds." The defendants also alleged that the plaintiff's claims were barred by the doctrine of governmental immunity.

On December 26, 2019, the defendants filed a motion for summary judgment arguing that they were entitled to governmental immunity on the negligence claims because all of the allegations involved public duties that are discretionary as a matter of law. The defendants further argued that, as to count three, because there was no legally viable negligence claim as to Dionne, the plaintiff's indemnification claim against the city failed as a matter of law. The plaintiff filed several motions for extension of time to file an opposition to the defendants' motion for summary judgment to allow her to complete discovery. The defendants consented to the plaintiff's motions.

On March 11, 2022, the plaintiff filed an objection to the motion for summary judgment wherein she argued that the defendants violated their ministerial duties as to the inspection and removal of the tree at issue.

On that same day, the plaintiff also filed a request to amend her complaint, seeking to add a count asserting common-law recklessness, alleging the failure to conduct an inspection of the tree that fell on Christopher. The plaintiff represented that her proposed new count of recklessness related back to her original complaint in that "[t]he factual basis for the claim of recklessness has not changed and the new claims merely amplify and expand upon the previous allegations in the original complaint by setting forth an alternate theory of liability." The defendants filed an objection to the request to amend, arguing that, because their motion for summary judgment had been fully briefed and there was a trial date assigned for August 3, 2022, granting the plaintiff's request to amend to include an additional count that raised a new basis of liability would prejudice them. The defendants also argued that the plaintiff offered no explanation in her request to amend as to why she waited more than two years after their filing of the motion for summary judgment to seek to amend her complaint. The plaintiff filed a reply to the defendants' objection wherein she argued that her proposed amendment was based upon recently conducted discovery by the parties.

On April 11, 2022, the trial court, *Sheridan, J.*, denied the plaintiff's request to amend "because this case is

scheduled for jury selection and the amendment will considerably delay the proceedings, the proposed amendment asserts claims not raised in the complaint which is the subject of a pending summary judgment motion, and because no explanation or rationale for the [delay] in asserting this claim has been provided." The plaintiff thereafter filed a motion for reargument or reconsideration of the court's denial of her request to amend, which the court summarily denied.

On April 18, 2022, the court held a hearing on the defendants' motion for summary judgment and the plaintiff's objection thereto, at which counsel for all parties appeared and presented argument in support of their respective positions. At the hearing, the plaintiff's counsel argued, consistent with the plaintiff's written objection to the defendants' motion, that a genuine issue of material fact existed as to whether Dionne's duty to inspect was ministerial or discretionary. At the conclusion of the hearing, the court took the matter under advisement.

On May 6, 2022, the plaintiff filed a motion for permission to file a supplemental brief to her objection to the motion for summary judgment to argue that the defendants' motion for summary judgment should be denied because the allegations of the original complaint were broad enough to state a nuisance claim and the alleged facts supported a nuisance claim not barred by governmental immunity. The defendants filed an objection arguing that the plaintiff has not, and cannot, allege a public nuisance claim against them.

On June 6, 2022, the court issued an order scheduling a videoconference for June 22, 2022, for the present case, in addition to all cases "set down for jury and court trial in July/August 2022," at which time counsel was "expected to either (1) report the case ready for jury selection and give an estimate of the days of evidence expected; or (2) request a continuance to a new trial date and agree upon the new trial date." As a result of the conference in the present case, the trial date was continued from August 3, 2022, to June 22, 2023.

On June 23, 2022, the plaintiff filed a "renewed" request to amend the complaint seeking to add a count for common-law recklessness and a count for public nuisance. In her request, the plaintiff reiterated that the new allegations related back to the allegations in the original complaint and asserted that the new trial date afforded ample time for the defendants to conduct any additional discovery that they deemed necessary. The defendants filed an objection arguing that the trial date was continued only to provide the court with time to decide the pending motion for summary judgment and that there was no reason to revisit the trial court's April 11, 2022 ruling denying the plaintiff's March, 2022 request to amend.

On August 22, 2022, the court granted the plaintiff's motion for permission to file a supplemental brief; however, the court ruled that "the argument advanced in the supplemental brief is rejected. The factual allegations of the operative complaint do not support a claim for public nuisance as an alternative to the negligence claims which have been clearly [pleaded]. Any argument based on concepts of public nuisance is therefore immaterial."

On that same day, the court denied the plaintiff's renewed request to amend her complaint, ruling that the proposed new counts were filed beyond the applicable statutes of limitations and that the new counts do not relate back to the allegations of the original complaint.

On August 30, 2022, the trial court issued a memorandum of decision rendering summary judgment in favor of the defendants. The trial court concluded that the allegations of negligence in counts one and two clearly related to discretionary functions and, therefore, the defendants were immune from liability both at common law and under General Statutes § 52-557n. The court further determined that, in the absence of liability for Dionne, there was no basis for a statutory indemnification claim against the city. This appeal followed.

I

The plaintiff first claims that the court erred by denying both of her requests to amend her complaint. We address each of the court's rulings in turn.

A

As noted herein, the plaintiff filed her first request to amend her complaint to add allegations of recklessness against the defendants on March 11, 2022, which was the same day that she filed her objection to the defendants' motion for summary judgment, which was filed on December 26, 2019, more than two years earlier. The court denied the plaintiff's request on the grounds that allowing the amendment would delay the proceedings, the defendants' motion for summary judgment was pending, and the plaintiff had offered no explanation for the delay in seeking to amend her complaint. When the plaintiff thereafter sought reconsideration of her request to amend, she referred to her reply to the defendants' objection to her request, wherein she explained that the delay was due to the fact that she had only recently been able to complete the deposition of Dionne and consult with experts. The court summarily denied her motion for reconsideration.

"Our standard of review of the [plaintiff's] claim is well defined. A trial court's ruling on a motion of a party to amend its complaint will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court

will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Booth* v. *Park Terrace II Mutual Housing Ltd. Partnership*, 217 Conn. App. 398, 432, 289 A.3d 252 (2023).

Here, the plaintiff has failed to demonstrate that the court abused its discretion in denying her first request to amend her complaint. When the plaintiff filed that request, the defendants' motion for summary judgment had been pending for more than two years and had been briefed by both parties, and there was an upcoming trial date. The trial court found that permitting the amendment would considerably delay the proceedings in light of the upcoming trial date. On those bases, we conclude that the court's ruling did not reflect an abuse of its discretion.

B

The plaintiff next claims that the court erred in denying her "renewed" request to amend her complaint. Specifically, the plaintiff argues that the court erred in addressing sua sponte whether the proposed claims of recklessness and public nuisance were barred by the applicable statutes of limitations. We agree.

As noted herein, after the trial date in this case was continued, the plaintiff filed a "renewed" request to amend her complaint, to which the defendants objected, arguing only that there was no reason for the court to revisit its earlier denial of the plaintiff's request to amend and that the plaintiff was simply attempting to "elude . . . summary judgment." The defendants did not argue in their objection to the plaintiff's request to amend that the new allegations were beyond the statutes of limitations or that they did not relate back to the allegations of the plaintiff's initial complaint.

The court nevertheless denied the plaintiff's renewed request to amend her complaint on the ground that the new allegations did not relate back to those in the initial complaint. The court held: "The proposed new counts are filed well beyond the two year limitation period in [General Statutes] § 52-584 for a claim of common-law recklessness and outside the three year limitation period provided by [General Statutes] § 52-577 for

actions alleging a public nuisance.

"[I]t is well settled that an amended complaint relates back to and is treated as filed at the time of the original complaint unless it alleges a new cause of action . . . . Thus, an amendment cannot allege a new cause of action that would be barred by the statute of limitations if filed independently. . . . Comparing the allegations in the original complaint to those in the proposed amended complaint, no allegations were set forth concerning public nuisance or common-law recklessness. To prove the challenged allegations of the amended complaint would require the presentation of new and different evidence as to different issues. . . . The plaintiff's new theories of liability are not supported by the original factual allegations of the earlier, timely complaint, and would require the presentation of new and different evidence, the amendment does not relate back. . . . As the new counts require proof of different elements and different evidence, the new counts do not relate back to the original allegations of negligence in the complaint." (Citations omitted; internal quotation marks omitted.)

The plaintiff argues that the court erred in raising sua sponte the statutes of limitations governing her proposed new claims. Our Supreme Court has stated that "[t]he de novo standard of review is always the applicable standard of review for" making such a determination. (Internal quotation marks omitted.) *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 325 Conn. 198, 206, 157 A.3d 70 (2017). Indeed, "[i]f the statute of limitations has expired and an amended pleading does not relate back to the earlier pleading, then the trial court has no discretion to allow an amendment." Id., 206 n.8.

It is well settled, however, that statutes of limitations may be waived and are, typically, not properly raised by the court sua sponte. "Where the trial court wishes to raise a statute of limitations issue which has not been raised by the parties, the question becomes whether the limitation is considered procedural or jurisdictional. . . . The general rule is that where the right of action exists independently of the statute in which the limitation is found, such a statutory bar is considered personal and procedural, and it is deemed waived unless it is specially pleaded. . . . This is so because it is considered that the limitation acts as a bar to a remedy otherwise available. . . . In these instances, a trial court may not raise the limitation on its own motion. Where, however, a specific limitation is contained in the statute which establishes the remedy, the remedy exists only during the prescribed period and not thereafter. In this situation, the court may properly raise the statute of limitations issue on its own motion because it is considered substantive or jurisdictional, and not subject to waiver." (Citations omitted.) *Orticelli* v. *Pow-*

*ers*, 197 Conn. 9, 15, 495 A.2d 1023 (1985).

Here, the court applied the statutes of limitations set forth in §§ 52-577 and 52-584,[4] neither of which establishes a remedy that does not otherwise exist. Therefore, those statutes are procedural, not jurisdictional, and the limitation periods set forth therein may be waived. See id.; *Cue Associates, LLC* v. *Cast Iron Associates, LLC*, 111 Conn. App. 107, 116–17, 958 A.2d 772 (2008). Because the defendants did not object to the plaintiff's renewed request to amend her complaint on the ground that the new allegations did not relate back to the allegations of her complaint and were, consequently, beyond the applicable statutes of limitations, the court erred in denying the request on that basis.[5]

## II

The plaintiff also claims that the court erred in rendering summary judgment in favor of the defendants on the claims set forth in her complaint. Specifically, the plaintiff argues that the court erred in concluding that her complaint failed to set forth a claim of public nuisance and that her negligence claims against the defendants were barred by governmental immunity. We are not persuaded.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Schofield* v. *Rafley, Inc.*, 222 Conn. App. 448, 460, 305 A.3d 652 (2023). With these principles in mind, we address in turn the plaintiff's challenges to the court's summary judgment.

## A

The plaintiff first argues that the court erred in rejecting her contention that her complaint set forth a claim for public nuisance. As recounted previously, the plaintiff initially did not object to the defendants' motion for summary judgment on this basis but sought permission, following oral argument on the defendants'

motion and her initial objection, to file a supplemental brief to raise this argument as an additional basis upon which to defeat the defendants' claim of governmental immunity. The court allowed the plaintiff to file a supplemental brief but held that the allegations of the complaint did not set forth a claim of public nuisance. The plaintiff argues that the court erred in so concluding.

"The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Emphasis omitted; internal quotation marks omitted.) *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023).

We next set forth the principles applicable to a nuisance claim brought against a municipality. Our Supreme Court "has stated often that a plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. . . . In addition, when the alleged tortfeasor is a municipality, our common law requires that the plaintiff also prove that the defendants, by some positive act, created the condition constituting the nuisance. . . . This common-law rule is codified at § 52-557n (a) (1) (C), which provides in relevant part that a political subdivision of the state shall be liable for damages to person or property caused by . . . acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . .

"Our Supreme Court has described the positive act requirement as follows: [A]t a bare minimum, § 52-557n (a) (1) (C) requires a causal link between the acts and the alleged nuisance. A failure to act to abate a nuisance does not fall within the meaning of the term acts, as used in § 52-557n (a) (1) (C), because inaction does not create or cause a nuisance; it merely fails to remediate one that had been created by some other force. Accord-

ingly, the plain meaning of § 52-557n (a) (1) (C) leads us to conclude that provision imposes liability in nuisance on a municipality only when the municipality positively acts (does something) to create (cause) the alleged nuisance. . . .

"A positive act is conduct that intentionally created the conditions alleged to constitute a nuisance. . . . [F]ailure to remedy a dangerous condition not of the municipality's own making is not the equivalent of the required positive act. . . . Similarly, permissive continuation of the alleged nuisance is not a positive act." (Citations omitted; internal quotation marks omitted.) *Bennetta* v. *Derby*, 212 Conn. App. 617, 622–23, 276 A.3d 455, cert. denied, 344 Conn. 903, 277 A.3d 135 (2022).

In her original complaint, the plaintiff set forth numerous ways in which she alleged that the defendants were negligent. In support of her contention that her original complaint set forth a claim of nuisance, the plaintiff identifies those allegations that she claims set forth a claim of nuisance: that the defendants "allowed [Christopher] and other visitors to use the basketball court in Goodwin Park when they knew or should have known that the tree next to the basketball court was rotted and dangerous" and "[t]hey created and maintained a dangerous and hazardous condition in Goodwin Park, or should have known that said tree was defective and hazardous, yet they continued to maintain it in the same manner with the same defects." In so claiming, the plaintiff essentially is alleging a failure to act on the part of the defendants, which, as we have stated, does not constitute a nuisance. When read in the context of the entirety of the complaint, the plaintiff has not alleged that the defendants created the condition that caused the tree to fall but that they should have recognized the hazard presented by the tree and remediated it. Because, as stated previously, a failure to act or remediate does not constitute a nuisance, the court did not err in concluding that the plaintiff's complaint failed to set forth such a claim.

B

The plaintiff also claims that the court erred in concluding that her claims against the defendants were barred by governmental immunity because a genuine issue of material fact exists as to whether the defendants' alleged negligence constituted a violation of a ministerial or discretionary duty.

The following legal principles guide our analysis of the plaintiff's claim. "According to our Supreme Court, [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . [The court has] also recognized, however, that governmental immunity may be abrogated by statute. . . . [Section] 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the

state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . [Our Supreme Court] previously [has] concluded that [t]his language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. . . .

"Subdivision (2) of § 52-557n (a) lists two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . The statute, thus, distinguishes between discretionary acts and those that are ministerial in nature, with liability generally attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts. . . .

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner. . . .

"In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. . . . A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs. . . . Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint. . . . [W]hether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52–557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 223–25, 131 A.3d 771 (2016).

Here, in addition to the undisputed facts set forth previously in this decision, the court also found, and it is undisputed, that "[a]s of July 27, 2018, there was no state of Connecticut or city of Hartford statute, ordinance, regulation, directive or policy which mandated the frequency or manner in which trees were to be examined, inspected, or designated to be culled, trimmed, or cut down within the city of Hartford.

"Prior to July 27, 2018, neither Dionne nor the city of Hartford had received a complaint about the tree that fell on August 7, 2018, at Goodwin Park or were otherwise notified that the tree presented a hazardous condition."

In concluding that the duty at issue was discretionary and not ministerial, the court reasoned that "[t]here is no statute or ordinance that prescribes the specific manner in which a tree warden must inspect a tree and what conditions would render a tree an immediate public hazard. Of necessity, much is left to the tree warden in the exercise of his or her own personal discretion to make those judgments. In a similar manner, no statute or ordinance—including . . . § 23-59—mandates that tree removal take place immediately upon the expiration of the ten day public comment period. The plaintiff has failed to identify a statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a tree warden or city forester to act in a prescribed manner, without the exercise of judgment or discretion. Thus, the [plaintiff has] failed to establish the existence of a ministerial duty that has been violated."

On appeal, the plaintiff's challenge to the summary judgment is twofold. First, she argues that "§ 23-59 imposes a ministerial duty when a tree poses an immediate public hazard." Because Dionne determined that the tree here did not pose an immediate public hazard, this argument merits no further discussion.

The plaintiff also contends that Dionne violated her ministerial duty to properly inspect the tree at issue. In support of this contention, the plaintiff argues that Dionne's visual inspection of the tree " 'amounted to no inspection at all.' " The plaintiff, however, has not cited any authority to support her contention that Dionne's duty to inspect the tree at issue was ministerial. Indeed, this court has held that § 23-59 "provides that many, but not all, of the duties of a tree warden involve the exercise of discretion." *Wisniewski* v. *Darien*, 135 Conn. App. 364, 373, 42 A.3d 436 (2012). *Wisniewski* involved a tree warden's ministerial duty to inspect upon receipt of a complaint concerning a potentially hazardous tree, which was supported by the testimony of the tree warden himself. Id., 374–75. The court in *Wisniewski* did not, however, address the manner or methods in which the tree should be inspected or what such an inspection

should entail.

Here, there was no complaint asserting that the tree at issue was potentially hazardous. Rather, the record reflects that Dionne's inspection of the tree at issue was a matter of routine. There were no policies or regulations that set forth the manner in which the inspection of a tree must be conducted. In the absence of such guidelines, it is clear that the routine inspection involved Dionne's judgment and discretion. We therefore conclude that the court did not err in concluding that the allegations of the complaint challenged Dionne's discretionary conduct. Accordingly, the court properly granted the defendants' motion for summary judgment.

The judgment is reversed with respect to the denial of the plaintiff's renewed request to amend her complaint and the case is remanded for further proceedings on the renewed request to amend the complaint; the judgment is affirmed with respect to the granting of summary judgment on the three counts of the original complaint and the denial of the plaintiff's first request to amend her complaint.

In this opinion the other judges concurred.

[1] Although Christopher, a minor, was named as the plaintiff in this case, the action was brought by Carmen Rodriguez on behalf of Christopher as Christopher's parent, as the general rule in Connecticut is that "minor children may . . . sue [only] by way of a parent or next friend." *Mendillo* v. *Board of Education*, 246 Conn. 456, 460 n.3, 717 A.2d 1177 (1988), overruled in part on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015). In the interest of simplicity, we refer to Carmen Rodriguez as the plaintiff throughout this opinion.

[2] "Chapter 26, article I, § 26-11, of the Hartford Code of Ordinances provides in relevant part: '(c) Whenever, in the opinion of the Director of Parks and Recreation or the City Forester appointed under the provisions of section 26-13, the public safety demands the removal or pruning of any tree or shrub under the control of the Department of Parks and Recreation, he may cause such tree or shrub to be removed or pruned. Unless such tree or shrub constitutes an immediate public hazard, he shall, at least five (5) days before such removal, post thereon a suitable notice stating his intention to remove such tree or shrub. If any person objects to such removal, he may appeal to the Director of Parks and Recreation in writing, who shall hold a public hearing at some suitable time and place after giving reasonable notice of such hearing to all persons known to be interested therein and posting a notice thereof on such tree or shrub. Within three (3) days after such hearing, the Director of Parks and Recreation shall render his decision granting or denying the application.' "

[3] "General Statutes § 23-59 provides: 'Powers and duties of tree wardens. The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough, except those along state highways under the control of the Commissioner of Transportation and except those in public parks or grounds which are under the jurisdiction of park commissioners, and of these the tree warden shall take the care and control if so requested in writing by the park commissioners. Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road or grounds. The tree warden shall expend all funds appropriated for the setting out, care and maintenance of such trees and shrubs. The tree warden shall enforce all provisions of law for the preservation of such trees and shrubs and of roadside beauty. The tree warden shall remove or cause to be removed all illegally erected signs or advertisements, placed upon poles, trees or other objects within any public road or place under the tree warden's jurisdiction. The tree warden may prescribe such regulations for the care and preservation of such trees and shrubs as the tree warden deems expedient and may

provide therein for a reasonable fine for the violation of such regulations; and such regulations, when approved by the selectmen or borough warden and posted on a public signpost in the town or borough, if any, or at some other exterior place near the office of the town or borough clerk, shall have the force and effect of town or borough ordinances. Whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under the tree warden's control, the tree warden may cause such tree, shrub or group of shrubs to be removed or pruned at the expense of the town or borough and the selectmen or borough warden shall order paid to the person performing such work such reasonable compensation therefor as may be determined and approved in writing by the tree warden. Unless the condition of such tree, shrub or group of shrubs constitutes an immediate public hazard, the tree warden shall, at least ten days before such removal or pruning, post on each tree or shrub and may post on each group of shrubs a suitable notice stating the tree warden's intention to remove or prune such tree, shrub or group of shrubs. If any person, firm or corporation objects to such removal or pruning, such person, firm or corporation may appeal to the tree warden in writing, who shall hold a public hearing at some suitable time and place after giving reasonable notice of such hearing to all persons known to be interested therein and posting a notice thereof on such tree, shrub or group of shrubs. Within three days after such hearing, the tree warden shall render a decision granting or denying the application, and the party aggrieved by such decision may, within ten days, appeal therefrom to the superior court for the judicial district within which such town or borough is located. The tree warden may, with the approval of the selectmen or borough warden, remove any trees or other plants within the limits of public highways or grounds under the tree warden's jurisdiction that are particularly obnoxious as hosts of insect or fungus pests.' "

[4] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, advanced practice registered nurse, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[5] On remand, the court will have to consider whether to grant the renewed request to amend in light of the arguments made by the parties at the time the amendment was sought, as well as the current circumstances, and any additional arguments that the parties might make, including any argument made by the defendants that the proposed causes of action do not relate back to the original complaint and are barred by the applicable statutes of limitations.